D.L., Individually and as Next Friend of J.L., R.L., Minors, and P.P., Plaintiffs,

v.

The UNIFIED SCHOOL DISTRICT # 497, and Dr. Douglas Eicher, School Administrator, Individually and in His Official Capacity, Defendants.

No. CIV.A.00–2439.

United States District Court, D. Kansas.

Sept. 18, 2002.

As Corrected Sept. 18, 2003.

Gregory P. Goheen, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for Plaintiffs.

Carrie E. Josserand, Meredith Jayne Rund, W. Joseph Hatley, Lathrop & Gage L.C., Overland Park, KS, for Defendants.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Pending before the court are plaintiffs' Motion to Stay (Doc. 115), defendants' Conditional Motion to Stay (Doc. 130), defendants' Motion to Dismiss Complaint (Doc. 66), plaintiffs' Motion to File Supplement to Final Witness and Exhibit List (Doc. 165), defendants' Motion to Strike Certain Exhibits Submitted in Support of Plaintiffs' Motion for Partial Summary Judgment (Doc. 118), defendants' Motion to Strike Affidavit of Cindy Harvel (Doc. 157), defendants' Motion to Strike and Preclude Testimony of Witnesses Not Previously Disclosed (Doc. 57), plaintiffs' Motion to Exclude Expert Testimony (Doc. 155), defendants' Motion for Review of Magistrate's Decision on Defendants' Motion for Protective Order Regarding Plaintiffs' Rule 30(b)(6) Notice (Doc. 119), plaintiffs' Motion to Compel Answers to Plaintiffs' First Interrogatories and First Request for Production (Doc. 137), defendants' Application for Stay of Magistrate Judge's Order (Doc. 128), defendants' Motion for Summary Judgment (Doc. 90), and plaintiffs' Motion for Partial Summary Judgment (Doc. 107).

As set forth below, plaintiffs' Motion to Stay (Doc. 115) is denied as moot. Defendants' Conditional Motion to Stay (Doc. 130) is denied. Defendants' Motion to Dismiss Complaint (Doc. 66) is granted in part and denied in part. Plaintiffs' Motion to File Supplement to Final Witness and Exhibit List (Doc. 165) is denied. Defendants' Motion to Strike Certain Exhibits Submitted in Support of Plaintiffs' Motion for Partial Summary Judgment (Doc. 118) is granted in part and denied in part. Defendants' Motion to Strike Affidavit of Cindy Harvel (Doc. 157) is denied. Defendants' Motion to Strike and Preclude Testimony of Witnesses Not Previously Disclosed (Doc. 57) is granted in part and denied in part. Plaintiffs' Motion to Exclude Expert Testimony (Doc. 155) is denied. Defendants' Motion for Review of Magistrate's Decision on Defendants' Motion for Protective Order Regarding Plaintiffs' Rule 30(b)(6) Notice (Doc. 119) is denied. Plaintiffs' Motion to Compel Answers to Plaintiffs' First Interrogatories and First Request for Production (Doc. 137) is granted. Defendants' Application for Stay of Magistrate Judge's Order (Doc. 128) is denied. Defendants' Motion for Summary Judgment (Doc. 90) is granted in part and denied in part. Plaintiffs' Motion for Partial Summary Judgment (Doc. 107) is granted in part and denied in part.

### I. Defendants' Conditional Motion to Stay (Doc. 130)

In their Conditional Motion to Stay, defendants request the court to stay all proceedings in this case (hereinafter "the federal court action") pending resolution of a related case, No. 01–2448, styled *Unified School District # 497 v. D.L.*, in Kansas state court (hereinafter "the state court action"). Defendants argue that this court should stay the case pursuant to *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). For the reasons set forth below, defendants' Conditional Motion to Stay is denied.

### A. Background [1]

Plaintiffs R.L. and J.L. are the minor children of plaintiff D.L. R.L. is autis-

---

1. The court will set forth the complete factual background later in the opinion. At this

tic and J.L. has a milder learning disability. P.P. cohabitates with D.L., but P.P. has no legal relationship to either D.L. or the children. This case arises from plaintiffs' allegations that defendants Unified School District # 497 (hereinafter "defendant U.S.D. # 497") and Dr. Douglas Eicher, a U.S.D # 497 administrator, failed to provide plaintiffs with access to educational services to which they were entitled. Furthermore, plaintiffs contend defendants improperly disclosed confidential information concerning the plaintiffs. Plaintiffs assert causes of action under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.;* Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.;*[2] the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983; and Kansas state law for invasion of privacy.[3]

### B. Procedural History

On April 18, 2000, defendant U.S.D. # 497 filed a lawsuit against D.L. and P.P. in the District Court of Douglas County, Kansas. In its state court petition, defendant U.S.D. # 497 brought a state law fraud claim and sought a declaratory judgment pursuant to Kansas state law. The petition alleged that D.L.'s children were not residents of defendant U.S.D. # 497, and sought to enjoin the children's attendance of schools in the district. The petition further stated that D.L. had fraudulently enrolled her children in defendant U.S.D. # 497 and that P.P. aided and abetted that fraud. The defendants in the state court action, D.L. and P.P., did not raise counterclaims in that action. Rather, on September 29, 2000, D.L., individually and on behalf of her minor children, along with P.P., filed the instant federal court action against defendants, asserting federal statutory and constitutional claims and a state law claim for invasion of privacy. On September 7, 2001, D.L. and P.P., defendants in the state court action, filed a Notice of Removal of that action to this court. After finding that removal was improper, this court remanded that action, Case No. 01–2448, styled *Unified School District No. 497 v. D.L.,* to the District Court of Douglas County, Kansas on May 30, 2002.[4] Having discussed the relevant procedural history, the court turns to the merits of defendants' Conditional Motion to Stay.

### II. Motion to Stay

In their motion, defendants assert two bases upon which this court should abstain

---

point, the court presents only those facts necessary to rule on defendants' Motion to Stay.

**2.** In a letter dated June 18, 2002, plaintiffs informed the court that they were withdrawing their claim for punitive damages under Title II of the ADA, in light of the United States Supreme Court's holding in *Barnes v. Gorman,* 536 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002), that punitive damages are not available under Title II of the ADA.

**3.** Plaintiffs initially brought a claim pursuant to the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g. In a letter dated June 20, 2002, plaintiffs informed the court that they were withdrawing "that por-

tion of their § 1983 claim which was based on the defendants' violation of F.E.R.P.A.," in light of the United States Supreme Court's holding in *Gonzaga University v. Doe,* 536 U.S. 273, 122 S.Ct. 2268, 2277–79, 153 L.Ed.2d 309 (2002) that FERPA does not create a private right of action. The court thus considers plaintiffs' FERPA claim withdrawn in its entirety.

**4.** Because the court remanded Case No. 01–2448–CM to state court, plaintiffs' Motion to Stay the Proceedings in U.S. District Court Case No. 01–2448–CM, or in the Alternative to Consolidate Case No. 01–2448–CM with the Instant Action (Doc. 115), is hereby denied as moot.

from ruling on the present case. First, defendants contend plaintiffs' claims are related to the pending parallel action in Kansas state court, and that, as a result, the federal constitutional issues in this action could be mooted by the state court's determination of Kansas state law—namely, the issue of whether the children reside within the boundaries of defendant U.S.D. # 497 pursuant to Kan. Stat. Ann. § 72–1046. Second, defendants allege that abstention is proper under the *Colorado River* doctrine, because the Kansas state court action is a parallel proceeding and "considerations of 'wise administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,'" *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236 (internal citation omitted), counsel in favor of staying the federal court action.

The court construes defendants' first argument under the abstention doctrine established in *Railroad Commission of Texas v. Pullman Co.* Although defendants label this argument as under the "first prong of the *Colorado River* doctrine" (Def.'s Mot. at 6), the language defendants cite from the *Colorado River* opinion upon which their argument is based is the Supreme Court's discussion of its prior rulings in *Pullman* and other cases that "[a]bstention is appropriate 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *Colorado River*, 424 U.S. at 814, 96 S.Ct. 1236 (citing *Pullman, inter alia*).

**A. *Pullman* Abstention**

 The *Pullman* doctrine "permits a federal court to stay its hand in those instances where a federal constitutional claim is premised on an unsettled question of state law, whose determination by the state court might avoid or modify the constitutional issue." *Vinyard v. King*, 655

F.2d 1016, 1018 (10th Cir.1981) (citing *Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)). "Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication." *Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," and "can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to State court would clearly serve a countervailing interest." *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). *Pullman* provides that a district court should abstain if three conditions are satisfied: (1) an uncertain issue of state law underlies the federal constitutional claim; (2) the state issues are amenable to interpretation by the state courts and such an interpretation would moot or substantially narrow the scope of the constitutional claim; and (3) an erroneous interpretation of the state law by the federal court would hinder important state law policies. *Vinyard*, 655 F.2d at 1018 (citing *D'Iorio v. Del. County*, 592 F.2d 681, 686 (3d Cir.1978)).

 First, the court must examine whether an unsettled issue of state law underlies plaintiffs' constitutional claims in this action. Defendants request the court to enter an order staying the federal court action so that the state court may first interpret the Kansas law regarding residency for school attendance purposes un-

der Kan. Stat. Ann. § 72–1046.[5] Defendants contend that the application of § 72–1046 is an unsettled question of state law because no Kansas state appellate court has interpreted the statute, even though the Tenth Circuit and the District of Kansas have examined it.

■ To determine whether abstention is proper, the court must examine whether § 72–1046 presents an issue of uncertain state law.

> [T]he doctrine of abstention "contemplates that deference to state court adjudication only be made where the issue of state law is uncertain." Where, on the other hand, it cannot be fairly concluded that the underlying state statute is susceptible of an interpretation that might avoid the necessity for constitutional adjudication, abstention would amount to shirking the solemn responsibility of the federal courts to "guard, enforce, and protect every right granted or secured by the constitution of the United States."

*Kusper v. Pontikes*, 414 U.S. 51, 54, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973) (citations omitted).

The Tenth Circuit has held that a state law is not unclear for purposes of *Pullman* abstention if the legal standard is not unsettled and the court's task merely is to apply the law to a novel set of facts. *See Vinyard*, 655 F.2d at 1019–20. In *Vinyard*, the Tenth Circuit held that the district court erred by abstaining to allow the state court to determine whether, under Oklahoma law, the plaintiff had a property interest in continued employment arising from an implied year-to-year contract with her employer. The Tenth Circuit determined that the state law was not so unclear as to permit abstention. In reversing the district court, the Tenth Circuit stated that "the difficulty in determining the state law issue before the court 'exist[ed] not because of an unclear standard, but because the precise set of facts posed here [had] not been addressed by the Oklahoma Supreme Court.'" *Id.* at 1019. The court emphasized that it "[did] not in any way minimize how difficult it may be to apply the law to the facts," but held that abstention was inappropriate on that basis, stating that "under such circumstances the district court may not abdicate its duty to adjudicate the matter." *Id.* (citations omitted).

■ In light of this guidance from the Tenth Circuit, this court believes that the Kansas law regarding residency of children for school attendance is not unsettled. Although there are no Kansas Supreme Court or Kansas Court of Appeals decisions specifically interpreting § 72–1046, there is authority supporting a conclusion that, under the statute, a child's residence for school attendance purposes is determined by the residence of the child's parent or a person acting as the parent. *See* Kan. Att'y Gen. Op. 97–60 (1997), 1997 WL 369371, at *3 ("The residence of a child for the purpose of determining where a child is able to attend school is determined by the location of the residence of the parent,

---

**5.** This statute provides, in relevant part, that "(a) Any child who has attained the age of eligibility for school attendance may attend school in the district in which the child lives if (1) the child lives with a resident of the district and the resident is the parent, or a person acting as parent, of the child; ..." Kan. Stat. Ann. § 72–1046. One of defendants' defenses in this case is that the plaintiff children were not residents of defendant U.S.D.

# 497. Plaintiffs, on the other hand, contend that the children resided in Douglas County and were therefore entitled to an education by defendant U.S.D. # 497. The same issue of residency is also before the state court, because that action includes a claim by defendant U.S.D. # 497 against plaintiffs, alleging that they fraudulently represented that they were residents of Douglas County.

or person acting as parent, of the child, rather than by the location where the child physically lives.") (citing Kan. Stat. Ann. § 72–1046). Another opinion of the Kansas Attorney General confirms that when a child lives with his or her parents, the parents' residence determines the child's residence for school attendance purposes; when a child does not live with his or her parents, the residence of the person acting in some capacity as the child's guardian determines the child's residence for school attendance purposes. *See* Kan. Att'y Gen. Op. 94–3 (1994), at *3.[6] Although an opinion of the Attorney General is neither conclusive nor binding on Kansas courts, it may be persuasive authority. *See In re Lietz Constr. Co.*, 273 Kan. 890, 902, 47 P.3d 1275, 1285 (2002) (citation omitted).

Further, the Tenth Circuit and District of Kansas opinions interpreting § 72–1046 have mirrored the Attorney General's opinions. In *Joshua W. v. Board of Education*, 13 F.Supp.2d 1199 (D.Kan.1998) (Marten, J.), *aff'd*, 211 F.3d 1278, 2000 WL 525904 (10th Cir.2000), *cert. denied*, 531 U.S. 1071, 121 S.Ct. 760, 148 L.Ed.2d 662 (2001), the district court granted summary judgment to the defendant school district on plaintiffs' IDEA claim, finding that IDEA did not obligate the district to provide a free and appropriate public education to plaintiff Joshua W. because he had ceased to become a resident of the district when both of his parents moved out of the district. *Id.* at 1203–05. The district court found that, pursuant to § 72–1046, plaintiff Joshua W. was not a resident of the defendant school district, because he "was neither living in or physically present in the District . . . and was not living with a parent or person acting as a parent in the District." *Id.* at 1203–04. In addition, the district court rejected plaintiffs' assertion that plaintiff Joshua W. was a resident of the district because he had lived in the district with his sister, noting that the sister had not been a "person acting as a parent" under the statute. *Id.* at 1204.

The Tenth Circuit affirmed, holding that "[u]nder Kansas law, residency with a parent who lives within the jurisdiction of the school district controls which school district is responsible for providing the free appropriate public education [under IDEA]." 211 F.3d 1278, 2000 WL 525904, at *2 (10th Cir.2000) (citing § 72–1046).[7] Even though Kansas courts would not be bound to apply the decisions of federal courts interpreting state law, a state court likely would give at least some weight to the federal courts' interpretation of § 72–1046 in *Joshua W.*[8]

---

**6.** The opinion provides, "[u]pon review of Kan. Stat. Ann. § 72–1046 and § 72–1111, it is clear that the residence of a pupil for the purpose of attending school is not limited to the residence of the parents. *See Mariadahl Children's Home v. Bellegarde Sch. Dist. No. 23*, 163 Kan. 49, 52, 180 P.2d 612, 612 (1947). . . . Rather, in those instances in which a pupil does not reside with parents, the residence of the pupil will be deemed to be: (1) the residence of the conservator or guardian; (2) . . . of the person who is liable by law to maintain, care for, or support the pupil; (3) the residence of the person who has actual care and control of the pupil and is contributing the major portion of the cost of support of the pupil; (4) the residence of the person who has legal custody of the pupil; or

(5) the residence of the person who has been granted custody of the pupil by a court of competent jurisdiction." Kan. Att'y Gen. Op. 94–3 (1994), at *3.

**7.** The court cites *Joshua W.* and other unpublished opinions of the Tenth Circuit pursuant to Tenth Circuit Rule 83.1.

**8.** This court also finds it significant that neither the Tenth Circuit nor the district court in *Joshua W.* found the state of the law regarding § 72–1046 to be so unsettled as to merit certification of the question to the Kansas Supreme Court. Although there is no indication in either opinion that the parties requested certification, federal courts have the power to certify questions of state law to the Kansas Supreme Court *sua sponte*. *See* Kan. Stat.

Moreover, in contexts outside the issue of residency for school attendance purposes, there is a long line of Kansas cases holding that a child's domicile is that of his or her parents. *See, e.g., In re Robben,* 188 Kan. 217, 220, 362 P.2d 29, 31–32 (1961). Further, the court does not believe that the language of § 72–1046 is unclear or ambiguous on its face. Even if the court must look to the residency of the children's mother pursuant to § 77–201(23), in order to determine the children's residency, the court does not believe the state of Kansas law regarding that statute is so unclear as to warrant abstention.

Because the court does not believe that Kansas law is unsettled regarding § 72–1046, the court finds that the first element required for *Pullman* abstention in this case is lacking. Even if the second element required for *Pullman* abstention were present, that a state court's interpretation of the issue could moot or substantially narrow the constitutional issues before this court, defendants have not attempted to establish the third element, that an erroneous interpretation by this court would hinder important state law policies. Accordingly, the court denies defendants' Conditional Motion to Stay to the extent it is based on *Pullman* abstention.

### B. *Colorado River* Abstention

Defendants also argue that the court should stay its decision in this case pursuant to the *Colorado River* doctrine. *Colorado River* recognized that concerns regarding judicial economy may warrant deferral of a federal suit when pending state litigation will resolve the issues presented in the federal case. 424 U.S. at 816–18, 96 S.Ct. 1236. Because the doctrine "springs from the desire for judicial

economy, rather than from constitutional concerns about federal-state comity," and "is an exception to our jurisdictional mandate from Congress," it "may only be used when 'the clearest of justifications ... warrant[s] dismissal.' Thus, while *Colorado River*'s judicial economy goals allow a federal court to avoid the 'virtually unflagging obligation ... to exercise the jurisdiction given [it],' the appropriate circumstances for deferral under the *Colorado River* doctrine are 'considerably more limited than the circumstances appropriate for abstention' and must be 'exceptional.' " *Rienhardt v. Kelly,* 164 F.3d 1296, 1303 (10th Cir.1999) (quoting *Colorado River,* 424 U.S. at 817–19, 96 S.Ct. 1236).

To determine whether deferral is appropriate under *Colorado River,* the court must first examine "whether the state and federal proceedings are parallel." *Allen v. Bd. of Educ.,* 68 F.3d 401, 402 (10th Cir.1995). " 'Suits are parallel if substantially the same parties litigate substantially the same issues in different forums.' The court should 'examine the state proceedings *as they actually exist* to determine whether they are parallel to the federal proceedings,' resolving any doubt 'in favor of exercising federal jurisdiction.' " *Id.* at 403 (quoting *Fox v. Maulding,* 16 F.3d 1079, 1082 (10th Cir.1994)).

Here, the parties in the federal and state court actions are "substantially the same." In the federal court action, D.L., her two minor children, R.L. and J.L., and P.P., who resides with D.L., bring several claims against defendants U.S.D. # 497 and Eicher, individually and in his official capacity. In the state court action, defendant U.S.D. # 497 brings a claim against D.L. and P.P. for fraud.

Ann. § 60–3201 (1994) (providing certification procedure); *Arizonans for Official En-*

*glish v. Arizona,* 520 U.S. 43, 76, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997).

Regarding whether "substantially the same" issues are being litigated in both suits, the court finds that the issue of whether the children resided within defendant U.S.D. # 497 is common to both the federal and state actions. However, any parallelism between the two actions relates only to the question of residency. In the federal action, plaintiffs allege several statutory and constitutional causes of action that are not present in the state action, whereas the state court action encompasses fraud claims based on Kansas state law.

Whether there is enough overlap between the cases to warrant a finding that they are "parallel" is unclear. However, given the Tenth Circuit's guidance that the court must resolve all doubts in favor of the exercise of federal jurisdiction, the court finds that the federal and state actions are not parallel. Although the issue of residency is common to both cases, the causes of action and issues raised differ significantly in the federal and state actions.

 Even if the actions were parallel within the meaning of *Colorado River,* the court finds that this case lacks the "exceptional circumstances" which must be present for abstention. To determine whether dismissal or an entry of stay is appropriate, a district court should consider the following factors:

> (1) [W]hether either court assumed jurisdiction over property; (2) whether the federal forum is inconvenient to the parties; (3) the avoidance of piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) which forum's substantive law governs the merits of the litigation; and (6) the adequacy of the state forum to protect the rights of the parties.

*Joseph Stowers Painting, Inc. v. A. Zahner Co.,* No. Civ. A. 99–2391–KHV, 2000 WL 210219, at *1 (D.Kan. Feb. 4, 2000) (citing *Colorado River,* 424 U.S. at 819, 96 S.Ct. 1236; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 23, 26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The test should be applied in a pragmatic, flexible manner. *Shadwick v. Butler Nat'l Corp.,* 950 F.Supp. 302, 304 (D.Kan.1996). No single factor is determinative, and "[o]nly the clearest of justifications will warrant dismissal." *Colorado River,* 424 U.S. at 818–819, 96 S.Ct. 1236.

 In the case at bar, the first factor is inapplicable because neither court has assumed jurisdiction over property. With regard to the second factor, the court concludes that litigating the federal action in Kansas City, Kansas, as opposed to Lawrence, Kansas, the venue for the state action, would pose only a slight inconvenience to the parties, if any. The third factor, the desirability of avoiding piecemeal litigation, weighs only slightly in favor of abstention. If the court denies the motion to stay, the parties will continue to litigate the same factual and legal issues regarding residency in both courts, risking inconsistent results and undermining judicial economy as to that issue.

However, the federal and state actions involve several claims that do not overlap, and this court ultimately will rule on the constitutional and statutory claims regardless of when and how the state court determines the residency issue. That plaintiffs' federal claims may remain even after the residency issue is determined weighs against a finding that a stay would avoid piecemeal litigation. *See Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. 927 (finding that a stay under *Colorado River* "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case"); *Waddell & Reed Fin., Inc. v. Torchmark Corp.,* 180 F.Supp.2d 1235, 1242 (D.Kan.2001).

 Regarding the fourth factor, the court notes that the defendants in this

action filed the state court action approximately five months prior to the date in which plaintiffs filed the instant action in federal court. However, courts should not measure priority "exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone,* 460 U.S. at 21–22, 103 S.Ct. 927. In this federal court action, discovery has closed, and the parties have fully briefed their motions for summary judgment, while the court has learned that the state court action has not progressed to a similar degree.

Finally, upon consideration of the fifth factor, whether state or federal law governs the merits of the litigation, the court determines that Kansas state law will apply to the residency issue, while plaintiffs' constitutional and statutory claims arise under federal law. With respect to the sixth factor, the court notes that state courts are entrusted with jurisdiction to hear plaintiffs' federal statutory and constitutional claims.

Applying these factors, the court finds that the "exceptional circumstances" which must exist for an entry of stay are lacking. The judicial economy concerns raised by the pendency of the residency issue in both the state and federal court actions are not so substantial as to weigh against the court's "unflagging obligation" to exercise its jurisdiction. Defendants' Conditional Motion to Stay is denied. As such, the court turns to the merits of the additional motions pending before the court.

### III. Defendants' Motion to Dismiss Complaint (Doc. 66)

Defendants request the court to enter an order, pursuant to District of Kansas Rule 16.2(d), dismissing plaintiffs' complaint for failure to act in good faith in preparing the parties' joint pretrial order.

As set forth below, defendants' motion is granted in part and denied in part.

District of Kansas Rule 16.2(d) provides that if counsel "fail[s] to appear at the pretrial conference or fail[s] to comply in good faith with the provisions of the rule, the court may, in its discretion, enter a judgment of dismissal or default." In the alternative, or in addition to dismissal, the court may impose any sanction provided for in Federal Rule of Civil Procedure 16(f) or District of Kansas Rule 11.1. D. Kan. R. 16.2(d). That rule incorporates D. Kan. R. 11.1(b)(4), which authorizes the court to order that costs, including attorney's fees, may be imposed against any party, or its attorney, who has failed to comply with a local rule. In considering whether to award sanctions, the court "may consider whether a party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate." D. Kan. R. 11.1(c).

The Scheduling Order of the court required the parties to submit a joint pretrial order no later than February 25, 2002. Defendants state that they contacted plaintiffs' counsel through two telephone calls and one faxed letter to request that plaintiffs submit their drafting contributions to the order by February 21, 2002, so that the parties could finalize the order before the deadline. Defendants further contend plaintiffs' counsel did not provide plaintiffs' contribution to the pretrial order by February 21, 2002, or by the date upon which the pretrial order was due, February 25, 2002. Defendants' attorneys submitted the pretrial order without plaintiffs' drafting contributions.

Plaintiffs respond by stating that plaintiffs' counsel was involved in trial preparation in another case during the week the pretrial order was due, and that he was involved in trial preparation for his own

divorce trial, which was scheduled to commence February 25, 2002. Plaintiffs' counsel states he does not recall receiving either telephone message or the faxed letter from defendants' counsel. Plaintiffs' counsel states he spoke with W. Joseph Hatley, counsel for defendants, by telephone on February 25, 2002, and Mr. Hatley did not mention the proposed pretrial order. Plaintiffs claim that defendants' counsel "made virtually no effort" to communicate, stating that "a single faxed letter and two telephone messages" did not constitute "a good faith effort to converse, confer, compare views, consult, and deliberate."

The court finds that dismissal of the complaint would be an unduly harsh sanction under these circumstances. However, the court also finds that plaintiffs' counsel's conduct in failing to confer with defendants in order to submit a joint proposed pretrial order by the deadline merits some sanction by the court. Even if plaintiffs' counsel did not receive the communications from defendants' counsel regarding the deadline, plaintiffs' counsel should have contacted defendants' counsel upon his own accord, to ensure that the parties were able to work together on the proposed pretrial order before the deadline. The court understands that counsel may, at times, become overwhelmed by other obligations. In such circumstances, counsel should request an extension of time to comply with a deadline. In this case, however, plaintiffs' counsel sought no such extension. As a result, defendants' counsel was required to prepare the entire proposed pretrial order, and the parties had not conferred to create a workable joint pretrial order prior to the pretrial conference.

The court does not believe that plaintiffs have shown they attempted in good faith to comply with D. Kan. R. 16.2. Further, plaintiffs have not shown that their failure to comply with the court's order was "substantially justified" or that other circumstances would render the imposition of sanctions inappropriate pursuant to D. Kan. R. 11.1. Consequently, the court sanctions plaintiffs pursuant to D. Kan. R. 11.1(b)(4) and 16.2(d). Plaintiffs are hereby ordered to pay the defendants' attorney's fees incurred in drafting plaintiffs' portion of the pretrial order. Further, plaintiffs are ordered to pay the attorney's fees incurred by defendants in drafting the instant Motion to Dismiss Complaint. Defendants are ordered to submit a Statement of Attorneys' Fees and costs to the court by September 26, 2002. Having determined that dismissal of the complaint is not warranted, the court turns to the pending evidentiary motions.

## IV. Plaintiffs' Motion to File Supplement to Final Witness and Exhibit List (Doc. 165)

Defendants move to strike from plaintiffs' Motion for Partial Summary Judgment the affidavit of Kathleen Urbom. Defendants seek to strike Ms. Urbom's affidavit on the grounds that plaintiffs failed to identify Ms. Urbom as a witness, either in their Initial Disclosures, their Final Witness and Exhibit List, or their Answers to First Interrogatories to Plaintiff D.L.[9] Defendants point out that plaintiffs knew that Ms. Urbom was someone who could be a potential witness in the case, because she was plaintiffs' attorney in late 1999 and early 2000. Defendants contend that Ms. Urbom's affidavit will not be admissible evidence at trial, because

9. After defendants filed their motion to strike, plaintiffs filed the instant motion for leave of the court to supplement their Final Witness List to include Ms. Urbom. After addressing the merits of plaintiffs' Motion to File Supplement to Final Witness and Exhibit List, the court will address defendants' Motion to Strike.

plaintiffs have never identified Ms. Urbom as a witness whom they expected to call at trial, either in their initial disclosures or in their Final Witness and Exhibit List filed on or about February 1, 2001.

In their reply, plaintiffs state that the purpose of Ms. Urbom's affidavit is to address defendants' assertion that plaintiffs failed to exhaust their administrative remedies prior to filing suit. Plaintiffs contend that they should be able to offer Ms. Urbom as a witness, because defendants did not raise the issue of exhaustion of administrative remedies until the pretrial conference, and Ms. Urbom would testify as to whether plaintiffs exhausted their administrative remedies. Further, plaintiffs state defendants would not be prejudiced by Ms. Urbom's testimony.

In their Motion to File Supplement to Final Witness and Exhibit List, plaintiffs claim Ms. Urbom's testimony "was not known to be relevant to the plaintiffs at the time their Witness and Exhibit list was filed," and that defendants would not be prejudiced by their delay. Plaintiffs further claim, without analysis, that they will be "severely prejudiced" if they are not allowed to supplement their final witness list to include Ms. Urbom's testimony.

■ The pretrial order in this case provides that no witness who is not listed on the parties' Final Witness List will be permitted to testify absent leave of the court. (Pretrial Order at 21). A final pretrial order shall be modified "only to prevent manifest injustice." Fed.R.Civ.P. 16(e). To determine whether a witness who was not included in the final pretrial order should be permitted to testify, a district court should consider:

(1) [T]he prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness in failing to comply with the court's order.

*Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1108 (10th Cir.1998) (citing *Smith v. Ford Motor Co.*, 626 F.2d 784, 797 (10th Cir.1980)).

■ Applying this test, the court does not believe plaintiffs have shown that modification of the pretrial order is necessary to prevent manifest injustice. Regarding the first factor, the degree of prejudice defendants would face, the court recognizes that defendants would incur prejudice by being required to depose Ms. Urbom and conduct related discovery less than one month from trial. At the same time, the court is not persuaded by defendants' argument that they would incur prejudice if Mr. Hatley would testify in order to rebut Ms. Urbom's testimony. In determining whether to modify the pretrial order, the court must be guided not by concerns due to the prejudice that would occur to defendants from the fact of Ms. Urbom's appearance as a witness, but rather by the prejudice defendants would incur due to the untimeliness of plaintiffs' request to include her.

Regarding the second and third factors, the court recognizes that defendants could cure the prejudice they would incur through an extension of time so that they could depose Ms. Urbom. As set forth later in the opinion, however, plaintiffs also have sought to introduce at trial the testimony of 31 witnesses who were not previously disclosed. While the impact of an extension of a deadline and time for related discovery may not be significant as to any one witness, the court believes that the cumulative impact of discovery for all of these witnesses would significantly disrupt the order and efficiency of the litiga-

tion. Thus, the second and third factors weigh against allowing Ms. Urbom to testify at trial.

With respect to the fourth factor, although plaintiffs had knowledge that Ms. Urbom was a potential witness in the case, they did not list her in their initial disclosures or in any other discovery documents. The court does not believe this is by itself indicia of bad faith or willful noncompliance on the part of plaintiffs. Further, plaintiffs' argument that Ms. Urbom's testimony is needed to address whether plaintiffs exhausted their administrative remedies is not persuasive. The court was able to fully analyze this issue without Ms. Urbom's affidavit, because the affidavit repeated facts that already were part of the record. Accordingly, the court denies plaintiffs' Motion to File Supplement to Final Witness and Exhibit List, and turns to defendants' Motion to Strike.

## V. Defendants' Motion to Strike Certain Exhibits Submitted in Support of Plaintiffs' Motion for Partial Summary Judgment (Doc. 118)

Defendants move the court for an order striking Exhibits 21 (*Lawrence Journal–World* article dated January 31, 2001), 22 (Affidavit of Kathleen R. Urbom, former attorney for the plaintiffs), and 25 (*Lawrence Journal–World* article dated April 20, 2000) from the exhibits submitted in support of Plaintiffs' Motion for Summary Judgment. Defendants also request the court to strike three statements from the affidavit of plaintiff D.L. As set forth below, defendants' motion is granted in part and denied in part.

### A. Motion to Strike *Lawrence Journal–World* Articles

■ Defendants move to strike Exhibits 21 and 25, articles that appeared in the *Lawrence Journal–World,* on the grounds that the articles are unauthenticated and are hearsay. Specifically, defendants con-

tend the articles consist of the out-of-court statements of the reporters who authored the articles, and are being offered for the truth of their contents. Plaintiffs have neither deposed the reporters who wrote the articles, nor provided their affidavits to the court.

Federal Rule of Civil Procedure 56(e) provides that affidavits supporting and opposing motions for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Federal Rule of Evidence 801 holds that hearsay, i.e., an out-of-court statement offered for its truth, is not admissible. Plaintiffs contend that the articles are not hearsay, because they are not offered for their truth. Rather, plaintiffs argue the articles are offered to show the mere fact that they were published.

■ The first article, Exhibit 21, is attached to support plaintiffs' Fact 110, which provides that "[s]hortly after the lawsuit was filed on April 20, 2000, an article appeared in the Lawrence Journal World discussing the suit." The court finds that Exhibit 21 is not hearsay because it is not being offered to prove that the contents of the article are true; rather, plaintiffs seek to introduce the article merely to show that it was published. Exhibit 21 thus falls outside the definition of hearsay, and is admissible to prove that it was published. Further, pursuant to Federal Rule of Evidence 902(6), newspaper articles are "self-authenticating." Extrinsic evidence of authenticity as a condition precedent to the admissibility of evidence is not required for printed materials purporting to be newspapers or periodicals. Accordingly, the court finds plaintiffs are not required to provide authentication in order to determine the admissibility of the

newspaper articles. Fed.R.Evid. 902(6). Exhibit 21 is admissible to show the fact of publication, and may be considered on summary judgment.

The second article, Exhibit 25, is attached to support plaintiffs' Facts 113 and 114. Fact 113 provides that Joe Nyre, an official for defendant U.S.D. # 497, stated that the U.S.D. # 497 "could increase Medicaid funding by $855,000 annually if U.S.D. # 497 sought Medicaid Reimbursement for all its eligible special education students." Fact 114 states that Mr. Nyre "also stated that the money received from Medicaid would be used to buy equipment for students with disabilities or to improve training for special education teachers." Plaintiffs argue that the articles are not hearsay because they are not being offered to prove the truth of the matters contained in the articles, but rather to show the fact they were published.

The court finds that plaintiffs seek to introduce Exhibit 25 for the purpose of proving that Mr. Nyre made the statements contained within it. However, the court finds that Mr. Nyre's statements in the article are not hearsay, because they constitute admissions by a party-opponent, and thus fall outside the hearsay rule pursuant to Federal Rule of Evidence 801(d)(2). Rule 801(d)(2) provides that a statement made by a party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, is not hearsay. As an official for the school district, Mr. Nyre was an agent of defendant U.S.D. # 497. He made his comments during the scope of his duties as a school official, and the statements concerned his conduct as a school official. Accordingly, the court finds Exhibit 25 is admissible.

### B. Affidavit of Kathleen Urbom

 Defendants move to strike Exhibit 22, the affidavit of Ms. Urbom, on the grounds that plaintiffs failed to identify Ms. Urbom as a witness, either in their Initial Disclosures, their Final Witness and Exhibit List, or their Answers to First Interrogatories to Plaintiff D.L.

Because the court has denied plaintiffs' motion to modify the pretrial order to include Ms. Urbom as a witness, her testimony will be inadmissible at trial. The court notes that while Federal Rule of Civil Procedure 56(e) requires that affidavits must be supported by admissible evidence, it does not require that affiants be listed as witnesses for trial. *See, e.g., Schmitt v. Beverly Health & Rehab. Services*, 993 F.Supp. 1354, 1359 (D.Kan.1998); *Taylor v. St. Louis Sw. Ry. Co.*, 746 F.Supp. 50, 53 (D.Kan.1990). In their motion to strike the affidavit of Cindy Harvel, which the court will consider later in the opinion, defendants attempt to distinguish *Schmitt* and *Taylor* on the grounds that the affidavits at issue in those cases either were not essential to the court's decision, *Schmitt*, 993 F.Supp. at 1360, or because the party moving to strike would have incurred no prejudice, *Taylor*, 746 F.Supp. at 53. Defendants argue that the court should reject these cases because defendants would incur prejudice in this case if Ms. Urbom and Ms. Harvel's affidavits were admitted. Further, defendants claim that Rule 56(e) limits the testimony that courts may consider upon summary judgment to that of affiants who will also testify at trial.

After having considered defendants' arguments, the court believes that *Schmitt* and *Taylor* are persuasive authority. Rule 56(e) provides that "[s]upporting and opposing affidavits ... shall set forth such facts **as would be admissible in evidence**." The interpretation of Rule 56(e) advanced by the *Schmitt* and *Taylor* courts is supported by the clear language of the rule. Rule 56(e) "focuses on the

quality of the information contained in the affidavit and the affiant's relationship to that information, not whether the affiant will be available to testify at trial." *FDIC v. Horn,* 751 F.Supp. 186, 188 n. 1 (D.Colo. 1990); *see also Paolello v. Marco,* No. 96–C–2793, 1997 WL 280654 at *4 (N.D.Ill. May 22, 1997) (denying motion to strike affidavit of witness not listed as a potential trial witness). Defendants' motion to strike Ms. Urbom's affidavit for purposes of consideration on summary judgment is denied.

## C. Affidavit of D.L.

■ Defendants move to strike from plaintiff D.L.'s affidavit her statement that the Turner and Piper School Districts requested that she sign certain forms "so that R.L. would be eligible for Medicaid benefits." (Pls.' Mot. Partial Summ. J. Attach. 20). In addition, defendants ask the court to strike plaintiff D.L.'s statement that the school districts "received Medicaid benefits for R.L." during the time in which R.L. was enrolled in defendant U.S.D. # 497.

Defendants object on the basis that plaintiff D.L.'s statements are hearsay and are not based upon her personal knowledge, and are therefore inadmissible under Federal Rule of Civil Procedure 56(e). Specifically, defendants contend that plaintiff D.L.'s statements that "the Turner School District provided me with a Medicaid Consent form and requested that I sign it so that R.L. could be eligible for Medicaid benefits" and that "the Piper Unified School District No. 203 ... also provided me with a Spectra Consent form and requested that I sign it so that R.L. could be eligible for Medicaid benefits" are hearsay because plaintiff D.L. merely repeated information given to her by employees of the Turner and Piper school districts.

The court finds that plaintiff D.L.'s statements are hearsay only to the extent that she states that the officials requested that she sign the forms "so that R.L. could be eligible for Medicaid benefits." That portion of plaintiff D.L.'s statement contains the alleged out-of-court statement of the school district officials as repeated by plaintiff D.L., and plaintiffs offer the statement to prove the truth of the matter asserted—that the districts sought to make R.L. eligible for Medicaid benefits. However, plaintiff D.L.'s testimony is admissible to the extent she states that the Turner and Piper School District officials provided her with a Medicaid Consent form and the Spectra Consent form; this portion of her testimony does not fall within the definition of hearsay as provided in Federal Rule of Evidence 801.

■ Second, defendants contend plaintiff D.L. has not shown that her statement that the Turner and Piper districts "received Medicaid benefits for R.L." was based upon sufficient personal knowledge. Defendants claim that only school district officials would have direct personal knowledge whether defendant U.S.D. # 497 received Medicaid benefits, and that any knowledge plaintiff D.L. would have received related to defendant U.S.D. # 497's Medicaid benefits would have come from district employees.

The court agrees with defendants that plaintiffs have failed to show that plaintiff D.L.'s statements that the Turner and Piper School Districts "received Medicaid benefits for R.L." are based upon plaintiff D.L.'s personal knowledge. Accordingly, the statements are inadmissible under Federal Rule of Evidence 602,[10] and may

---

10. Federal Rule of Evidence 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed.R.Evid. 602.

not be considered by the court pursuant to Federal Rule of Civil Procedure 56(e).

Defendants' Motion to Strike Certain Exhibits Submitted in Support of Plaintiff's Motion for Partial Summary Judgment (Doc. 143) is therefore granted in part and denied in part.

## VI. Defendants' Motion to Strike Affidavit of Cindy Harvel (Doc. 157)

█ Defendants also request the court to strike the affidavit of Cindy Harvel from plaintiffs' Reply in support of plaintiffs' Motion for Partial Summary Judgment on the basis that it fails to meet the requirements of Federal Rule of Civil Procedure 56(e). In the alternative, defendants seek to strike the affidavit on the grounds that plaintiffs were not substantially justified in failing to disclose the identity of Ms. Harvel pursuant to Federal Rule of Civil Procedure 26(a). The affidavit provided by Ms. Harvel contains information regarding R.L.'s eligibility for Medicaid. Defendants further claim that Ms. Harvel's testimony, if admitted, would be prejudicial due to the vagueness of the business record Ms. Harvel authenticated. Finally, defendants contend that plaintiffs' submission of the affidavit is sanctionable under Federal Rule of Civil Procedure 37(b)(2), because plaintiffs failed to obey the scheduling order of the court when they failed to identify Ms. Harvel on their final witness list.

First, the court addresses defendants' claim that Ms. Harvel's affidavit is inadmissible under Federal Rule of Civil Procedure 56(e) because Ms. Harvel was not listed on plaintiffs' final witness list. As the court has noted in its discussion of Ms. Urbom, while Federal Rule of Evidence 56(e) requires that affidavits must be supported by admissible evidence, it does not require that affiants be listed as witnesses for trial. *See, e.g., Schmitt,* 993 F.Supp. at 1359; *Taylor,* 746 F.Supp. at 53.

The court thus finds that, although Ms. Harvel is not listed as a trial witness, the court may consider her testimony for summary judgment purposes if it meets the requirements of Rule 56(e). Accordingly, defendants' motion to strike is denied. At the same time, the court recognizes it must counterbalance any prejudice that could occur to defendants through the court's consideration of Ms. Harvel's affidavit. The court thus allows defendants to depose Ms. Harvel, if they choose to do so.

Second, defendants claim that Ms. Harvel's affidavit would be prejudicial to defendants, because the record is vague. The court believes that defendants' argument addresses the persuasive weight of the evidence, rather than its admissibility. Effective cross-examination would mitigate any potential prejudice. Defendants' motion to strike Ms. Harvel's affidavit is denied on this basis.

Third, defendants request the court to impose sanctions upon plaintiffs due to their failure to obey the scheduling order of the court, as provided in Federal Rule of Civil Procedure 37(b)(2)(B), (C), and (D). Specifically, defendants contend plaintiffs violated the court's scheduling order by failing to identify Ms. Harvel as a witness on plaintiffs' final witness list. Defendants also complain that plaintiffs never provided any indication, until after the close of discovery, that they would rely upon plaintiffs R.L. and J.L.'s eligibility to receive Medicaid benefits to support their case-in-chief. Defendants contend that plaintiffs have "sandbagged" this issue by failing to reveal it in their answers to defendants' Interrogatories Nos. 4 and 5, in which plaintiffs purported to state the complete factual basis for their ADA and equal protection claims. Further, defendants argue that plaintiffs' omission of Ms. Harvel from their witness lists was intentional.

Defendants have not shown that plaintiffs' conduct is worthy of sanctions under Federal Rule of Civil Procedure 37 for failure to comply with the court's scheduling order. The court believes plaintiffs have offered a sufficient justification for their failure to previously disclose Ms. Harvel as a potential witness, because Ms. Harvel's testimony is rebuttal evidence. Moreover, the court believes it can mitigate any potential prejudice defendants would incur due to the timing of plaintiffs' disclosure of Ms. Harvel by allowing defendants sufficient time to conduct any needed discovery. Defendants' Motion to Strike Affidavit of Cindy Harvel Submitted in Support of Plaintiffs' Motion for Partial Summary Judgment (Doc. 157) is denied.

## VII. Plaintiffs' Motion to Strike and Preclude Testimony of Witnesses Not Previously Disclosed (Doc. 57)

■ In addition, defendants move the court for an order precluding the use of all witnesses and exhibits listed by plaintiffs in their Final Witness and Exhibit List that have not been previously or properly disclosed. The scheduling order for this case obligated all parties to serve their initial Rule 26 disclosures by October 26, 2001, file and serve their Preliminary Witness and Exhibit Lists by November 30, 2001, and their Final Witness and Exhibit Lists by February 1, 2002. On February 1, 2002, plaintiffs filed a Final Witness and Exhibit List, which included 31 persons who had not been listed in plaintiffs' initial Rule 26 disclosures, or in any of plaintiffs' responses to written discovery requests. Further, plaintiffs listed four witnesses, Diane Lund, M.A., Jackie Springer, M.D., Jan B. Roosa, Ph.D., and Paul Richard Epps, M.D., as witnesses who would testify regarding "the children's disabilities and the impact of the actions of the District on the children." Defendants state they believe plaintiffs are attempting to introduce these witnesses for the purpose of introducing expert testimony, and ask the court to exclude these witnesses because plaintiff did not make expert disclosures prior to the December 31, 2001 deadline. In addition, defendants claim that plaintiffs' Final Witness and Exhibit List also fails to describe sufficiently many of plaintiffs' proposed exhibits. The court will examine each of defendants' objections in turn.

### A. Standard

■ A party must make an initial disclosure of "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information ...." Fed. R.Civ.P. 26(a)(1)(A). Further, a party is under a continuing obligation "to supplement or correct the [Rule 26(a)] disclosure or response to include information thereafter acquired ... if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e)(1). A court must exclude evidence if a party's failure to disclose information or amend a prior response in accordance with Rule 26 lacks substantial justification and is not harmless. Fed.R.Civ.P. 37(c)(1). Further,

The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court. A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice;

(3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir.1999) (citations omitted).

## B. Analysis

The court first examines whether plaintiffs failed to disclose information or to supplement their disclosures according to Rule 26. After determining whether plaintiffs failed to comply with the rules, the court will turn to the question of whether such failure was substantially justified.

Plaintiffs included for the first time in their Final Witness and Exhibit List eleven employees or agents of defendants; two investigators with the Office of Civil Rights of the U.S. Department of Education (OCR), who had been corresponding with defendants and conducting an investigation of alleged discrimination by defendants against individuals with disabilities; two reporters from the *Lawrence Journal–World* who wrote several articles about this litigation and with whom defendants gave interviews; Ms. Cynthia Lane, a witness who was not included on either party's lists but was deposed by defendants; four individuals involved with special education programs at the University of Kansas attended by R.L. after school; and four doctors, whom plaintiffs claim are listed not as experts, but as treating physicians exempt from expert disclosure requirements.

Defendants claim plaintiffs were aware of the existence of the witnesses at the time plaintiffs filed their Rule 26(a) Initial Disclosures. Plaintiffs counter that defendants would incur little prejudice because the witnesses in question are individuals about whom defendants had knowledge throughout discovery. The court will ex-amine each of defendants' objections in turn.

### 1. Current and Former Employees; *Lawrence Journal–World* Reporters; Ms. Cynthia Lane; Special Education Program Officials; OCR Investigators; and Doctors and Therapists

Plaintiffs present no evidence that they were unaware at the time they issued their initial disclosures of the existence of the eleven employees of defendant U.S.D. # 497, the two reporters, Ms. Lane, the four individuals from the special education programs at the University of Kansas, the two investigators from the U.S. Department of Education's Office of Civil Rights (OCR), and the four doctors and therapists at the time plaintiffs issued their initial disclosures. Further, plaintiffs offer no explanation for their failure to supplement their initial disclosures.

Defendants proffer several reasons why plaintiffs' failure to disclose these witnesses violated Rules 26(a) and 26(e). First, defendants point out that the newspaper articles written by the reporters were published in the spring of 2000. In addition, defendants specifically requested in their interrogatories that plaintiffs disclose the identity of any witness whom D.L. claimed had information that would support her invasion of privacy claim. Further, defendants state that plaintiffs knew of the OCR investigation prior to this lawsuit, because plaintiffs instigated the investigation through a complaint to the OCR which was filed on May 11, 2000. Defendants also point out that, at the time of their initial disclosures, plaintiffs knew of the existence of the four treating physicians and therapists who had worked with plaintiffs.

The court thus finds that plaintiffs failed to disclose the eleven current and former

employees of defendant U.S.D. # 497, two *Lawrence Journal–World* reporters, Ms. Cynthia Lane, the special education program officials, the two investigators from the OCR, and the four doctors and therapists as required by Federal Rule of Civil Procedure 26(a), or to provide a supplemental disclosure of these witnesses under Rule 26(e).

Next, the court must determine whether plaintiffs' failure to disclose these witnesses was substantially justified. In this case, defendants have shown that plaintiffs had knowledge of these individuals at the time plaintiffs filed their initial disclosures. Plaintiffs offer no cognizable explanation for their failure to include the witnesses at that time. Accordingly, the court finds that plaintiffs' failure to disclose these eleven witnesses at the time of the initial disclosures lacks substantial justification. Plaintiffs' assertion that defendants had knowledge of the existence of the witnesses is simply insufficient to put defendants on notice that these individuals would be potential witnesses in the case. *Accord Barker v. Williams Pipeline Co.,* Civ. A. No. 92–2117, 1993 WL 191335, at *2–3 (D.Kan. May 14, 1993) (striking expert witnesses from plaintiffs' witness list when plaintiff testified his attorneys had been aware of the experts' existence three months prior to their designation).

A party's failure to comply with required disclosures is only harmless when it results in no prejudice to the opposing party. *Hall v. United Parcel Serv.,* No. Civ. A. 99–2467–CM, 2000 WL 554059, at *2 (D.Kan. Apr. 28, 2000). Plaintiffs' failure to make the required disclosures has undermined defendants' ability to conduct discovery as related to these witnesses.

The court finds that plaintiffs' failure to disclose or supplement as to these witnesses lacked substantial justification and was harmful to defendants. Accordingly, the court grants defendants' motion to strike eleven current and former employees of defendant U.S.D. # 497, two *Lawrence Journal–World* reporters, Ms. Cynthia Lane, the special education program officials, the two investigators from the U.S. Department of Education's Office of Civil Rights, and the four doctors and therapists from plaintiffs' Final Witness and Exhibit List.

## 2. Defendants' Counsel

Defendants' lead counsel, Mr. Hatley, is included as a witness on plaintiffs' Final Witness List. Defendants allege that they would suffer prejudice if Mr. Hatley is required to testify, because he may become unable to represent defendants at trial. Further, defendants contend plaintiffs violated Rule 26(a) by failing to disclose Mr. Hatley as a potential witness earlier in discovery, since plaintiffs had been aware of his existence. Plaintiffs state in their Final Witness List that Mr. Hatley is listed:

> [T]o testify concerning his involvement with plaintiffs concerning the enrollment of R.L. and J.L. in U.S.D. # 497, his communications with the press concerning allegations made by defendants against plaintiffs, his involvement with O.C.R. related to their investigation, his involvement with defendants concerning the decision to initiate a lawsuit against plaintiffs and other matters relevant to this litigation.

(Pls.' Witness & Ex. List at 4).

Courts must exercise "great care" prior to permitting the deposition of an attorney, if the attorney's advice is not an issue in the case. *Kelling v. Bridgestone/Firestone, Inc.,* 153 F.R.D. 170, 171 (D.Kan.1994). Accordingly, the deposition of opposing counsel is permissible only when (1) no other means exist to obtain the information than to depose opposing

counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case. *Id.* (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986)).

In the case at bar, plaintiffs have made no showing that any information Mr. Hatley may have is not discoverable by other means. In fact, plaintiffs do not address the issue of Mr. Hatley's testimony in their Response to defendants' Motion to Strike. Moreover, even assuming that the information Mr. Hatley could disclose is relevant and nonprivileged, plaintiffs have not shown that the information would also be crucial to the preparation of their case. Accordingly, defendants' Motion to Strike is granted as to Mr. Hatley. Mr. Hatley is stricken from plaintiffs' Final Witness List.

### 5. Matters Not Sufficiently Identified

Defendants' move to strike several discovery requests on the grounds that they are vague or insufficient. The court denies defendants' motion on the basis that defendants have not certified that they have made a reasonable effort to confer with plaintiffs' counsel as required by District of Kansas Rule 37.2.

Defendants' Motion to Strike and Preclude Testimony by Witnesses Not Previously Disclosed and the Use of Exhibits not Properly Disclosed or Identified by Plaintiffs is therefore granted in part and denied in part. The court next examines plaintiffs' Motion to Exclude Expert Testimony.

### VIII. Plaintiffs' Motion to Exclude Expert Testimony (Doc. 155)

 Plaintiffs have moved the court to exclude the expert testimony and reports of Dr. Jay Chambers. Plaintiffs contend that Dr. Chambers's testimony is not relevant for two reasons. First, plaintiffs

claim that Dr. Chambers's analysis of the costs of educating special education students in Kansas is not relevant because undue expense is not a defense to a claim of discrimination under the Rehabilitation Act § 504, unless defendants establish that accommodating plaintiffs would result in an undue financial burden. Second, plaintiffs state that Dr. Chambers's report does not address the additional expenses defendant U.S.D. # 497 would actually incur in educating plaintiffs R.L. and J.L., because the report is based upon a study of the entire state of Kansas.

Defendants contend plaintiffs' assertion that undue expense is not a defense is erroneous, and assert plaintiffs must prove as part of their prima facie case that the accommodation plaintiffs seek—that of modifying defendant U.S.D. # 497's non-resident admissions policy to permit the admission of children with disabilities—is reasonable. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Consequently, according to defendants, Dr. Chambers's report is relevant. Further, defendants state that plaintiffs' objection based upon the scope of Dr. Chambers's report impacts upon the weight of the evidence rather than its relevance.

The court finds that Dr. Chambers's report would have a tendency to prove or disprove a fact at issue in the case—the cost defendant U.S.D. # 497 would incur in educating an autistic child. Further, the court believes plaintiffs' objection that Dr. Chambers's study is not particularized as to the burden defendant U.S.D. # 497 would bear addresses the weight of the evidence rather than its admissibility. The court finds Dr. Chambers's expert testimony and report is admissible under

Federal Rule of Evidence 401. Plaintiffs' motion is denied.

## IX. Defendants' Motion for Review of Magistrate's Decision on Defendants' Motion for Protective Order Regarding Plaintiffs' Rule 30(b)(6) Notice (Doc. 119) and Plaintiffs' Motion to Compel Answers to Plaintiffs' First Interrogatories and First Request for Production (Doc. 137)

Defendants request the court to overrule U.S. Magistrate Judge David J. Waxse's May 3, 2002 order (Doc. 114) which denied defendant's Motion for Protective Order (Doc. 68) regarding a Rule 30(b)(6) deposition notice that was served upon defendants. The May 3, 2002 order denied defendants' motion for protective order, in which defendants sought to prevent plaintiffs from discovering the names and addresses of nonresident students who had been admitted to defendant U.S.D. # 497. In their motion to compel, plaintiffs ask the court to enter an order requiring defendants to answer interrogatories in which plaintiffs requested the names of and information about these students. Defendants also request the court to reverse the May 3, 2002 order to the extent that it required defendants to produce witnesses for deposition when their production would require defendants to produce documents in a shorter timeframe than that allotted by Federal Rule of Civil Procedure 34. Finally, defendants ask the court to review the portion of the May 3, 2002 order in which the court required defendants to comply with plaintiffs' request for discovery related to the defendant U.S.D. # 497's decision to pursue an action against the plaintiffs in state court. As set

forth below, the court denies defendants' motion for review of magistrate's order and grants plaintiffs' motion to compel.

### A. Standard for Review of Magistrate's Order

■■■ Under 28 U.S.C. § 636(b)(1)(A), the district court's scope of review of a magistrate's decision is whether the order has been shown to be "clearly erroneous or contrary to law." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461–62 (10th Cir.1988). "The clearly erroneous standard requires that the court affirm the decision of the magistrate unless 'on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed.'" *Aerotech Res., Inc. v. Dodson Aviation, Inc.*, No. Civ. A. 00–2099–CM, 2001 WL 474302, at *3 (D.Kan. Apr. 23, 2001) (quoting *Ocelot Oil Corp.*, 847 F.2d at 1461–62) (internal citation omitted); *see also* Fed.R.Civ.P. 72(a); D. Kan. Rules 72.1.1(c) & 72.1.4(a).[11]

### B. Confidential Information

First, defendants seek reversal of Judge Waxse's denial of defendant U.S.D. # 497's motion to protect its representatives from being required to respond to plaintiffs' request for information regarding the identity of other nonresident pupils who were enrolled in defendant U.S.D. # 497, and of other parents asked to remove their children from defendant U.S.D. # 497. Defendants object on the grounds that divulging this information could subject defendant U.S.D. # 497 to further litigation under the FERPA, 20 U.S.C. § 1232g. Plaintiffs request the court to

---

**11.** Plaintiffs argue that the court cannot review the magistrate's order because defendants never sought reconsideration of the order under District of Kansas Rule 7.3. That rule does not indicate that reconsideration is

required prior to a party's seeking review of a magistrate's order, and plaintiffs cite no law to the contrary. The court therefore rejects plaintiffs' argument.

enter an order compelling defendants to provide this information.

Judge Waxse denied defendants' objection on the grounds that a Department of Education regulation states that an educational institution "may disclose personally identifiable information from an education record of a student without the consent required by § 99.30 if the disclosure . . . is to comply with a judicial order or lawfully issued subpoena." 34 C.F.R. § 99.31(a)(9)(i). Judge Waxse thus held that discovery of this information could move forward as long as the parental notice requirements of this regulation were met. Further, Judge Waxse determined that "a Stipulated Protective Order restricting disclosure of the information to the purposes of this litigation only could adequately address the District's concerns" regarding the disclosure of confidential information (Order at 4).

Defendants state that they already have provided information regarding each nonresident student who was admitted to defendant U.S.D. # 497 between 1997 and 2001, but did not provide the names of the students in order to avoid liability under FERPA. Further, defendants claim there is no reason why plaintiffs would need to know the names of the students, and that the relevance of the names is outweighed by the burden defendants would incur in producing them. In defendants' response to plaintiffs' Motion to Compel, defendants state that if the court were to order defendant U.S.D. # 497 to provide this information, it would be required to give advance notice to several hundred students or their parents.

 The court finds defendants have failed to show that Judge Waxse's decision denying the protective order was clearly erroneous or contrary to law. The regulation at issue clearly provides that otherwise confidential information may be disclosed pursuant to court order. Furthermore, defendants' argument that the actual names of the students are only marginally irrelevant, whereas the burden of potential liability defendants would face is substantial, is not persuasive. The regulation at issue operates to protect an educational institution from liability by creating an exception to the rule prohibiting disclosure of confidential information regarding students. Furthermore, as the court has noted above, the Supreme Court recently ruled that FERPA does not create a private right of action. *Gonzaga Univ.*, 122 S.Ct. at 2277–79. Defendants have not shown how disclosure · of the identifying information would subject them to liability, nor have they shown that the requested production would be unduly burdensome in some other respect. Defendants' motion for review is denied on this basis.

 In the same vein, the court grants plaintiffs' motion to compel defendants to provide the names and addresses of the students requested. The court denies plaintiffs' request in their motion to compel for an award of costs and fees associated with the preparation of the motion pursuant to Fed.R.Civ.P. 26, 33, 34, and 37. Defendants' failure to produce the names and addresses is not sanctionable, because defendants simultaneously sought review of Judge Waxse's decision and a stay of the May 3, 2002 order. Defendants are thus ordered to disclose the names and addresses requested by plaintiffs by September 26, 2002.

### C. Untimely Request for Documents/Unreasonable Notice

 Defendants seek review of the part of Judge Waxse's order which denied defendants' objection to paragraphs 1, 5, 6, 8–9, and 11 of the Rule 30(b)(6) deposition noticed by plaintiffs. Before Judge Waxse, defendants objected that no witness or

witnesses had personal knowledge or memory of the information sought in the requests. Consequently, the only way that a representative of defendants could prepare to testify in deposition on the subjects would be to locate and review documents containing the information. Defendants argue that plaintiffs thus attempted to discover documents well beyond the expiration of the time for serving written discovery requests had passed. Further, defendants contend that plaintiffs attempted to require the production of documents by defendants via the deposition notice on only eight days' notice, which was too little time in light of the effort that would have been required in order to prepare the witnesses to testify on the subjects noticed for deposition.

Judge Waxse denied defendants' argument on the basis that because defendant U.S.D. # 497 had been ordered to respond to plaintiffs' written discovery requests, defendants' argument was "not persuasive." Defendants assert this ruling was clearly erroneous and contrary to law. Specifically, defendants show that the deposition paragraphs requested information that plaintiffs had not previously sought in written discovery requests. Defendants argue that Judge Waxse's ruling enabled plaintiffs to circumvent Federal Rule of Civil Procedure 34, which allows parties 30 days in which to produce documents to an opposing party.

The court finds that Judge Waxse's ruling was not clearly erroneous or contrary to law. Defendants cite no authority for the proposition that a protective order should be entered to prevent the taking of a deposition that would have the effect of being a request for documents absent Rule 34's timing requirements. However, the court recognizes that defendants may require additional time in order to prepare adequately for the noticed depositions. Accordingly, the court orders that the de-

positions shall not take place until September 26, 2002.

### D. Information Regarding Filing of Suit by Defendant U.S.D. # 497 Against Plaintiffs

Finally, defendants seek review of the part of the order which denied defendants' objection to plaintiffs' request that defendant U.S.D. # 497 produce a representative to testify regarding "the person or persons who made the final decision or recommended that the referenced action be filed against [D.L.] or [P.P.] prior to consultation with the School Board and the reasons for instituting this action." Defendants argue that the information sought by plaintiffs is not relevant, because both parties agree that defendant U.S.D. # 497 subsequently ratified the filing of the suit, thus rendering the initial lack of authorization meaningless. Further, defendants claim that plaintiffs failed to meet their burden to justify the need for this information to be discovered.

In response, plaintiffs contend that the information they seek would address defendant Eicher's motives and whether he should be entitled to qualified immunity. Judge Waxse overruled defendant U.S.D. # 497's objection on the grounds that relevance was "apparent" and the defendants' argument with respect to relevance was "not persuasive."

The court finds that Judge Waxse's ruling was not clearly erroneous or contrary to law. "Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Naerebout v. IBP, Inc.,* Civ. A. No. 91–2254–L, 1992 WL 754399, at *2 (D.Kan. Aug. 19, 1992) (citation omitted). Plaintiffs have set forth a sufficient basis

for the court to find that the discovery plaintiffs seek could lead to the finding of admissible and relevant evidence, unrelated to the ratification issue. Defendants' motion for review of magistrate's order is denied on this basis. For the same reasons, plaintiffs' motion to compel is granted.

## X. Defendants' Application for Stay of Magistrate Judge's Order (Doc. 128)

Defendants requested the court to stay Judge Waxse's May 3, 2002 order denying defendants' request for protective order. Because the court has denied defendants' motion for review of magistrate's order, the court hereby denies the application for stay as moot.

## XI. Defendants' Motion for Summary Judgment (Doc. 90) and Plaintiffs' Motion for Partial Summary Judgment (Doc. 107)

### A. Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

In considering a summary judgment motion, the court views the evidence in the light most favorable to the non-moving party. *Wilson*, 98 F.3d at 1253. The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th

Cir.1998). A movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. The non-moving party, however, may not "rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Instead, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A. Facts

Plaintiffs R.L. and J.L. are the minor children of plaintiff D.L. R.L. is autistic and J.L. has a milder learning disability. Both R.L. and J.L. are unemancipated minors. D.L. became divorced from R.L. and J.L.'s father in 1993. D.L. was awarded primary residential custody of R.L. and J.L. She is employed as a contract carrier for the *Kansas City Star*, and delivers newspapers from approximately midnight to 6:00 a.m. D.L. arranges for her parents and brothers to care for her children at night while she is at work.

Defendant U.S.D. # 497 is a public school district located in Lawrence, Kansas that receives both federal and state financial aid to provide special education services for students attending school in the district. Its governing body is the locally elected school board. Defendant Eicher

has been Director of Special Education for defendant U.S.D. # 497 since July 1995. His responsibilities include developing defendant U.S.D. # 497's special education budget and recruiting and hiring special education teachers and paraprofessionals.

### 1. R.L. and J.L. Enroll as Residents of U.S.D. # 497

In August 1997, D.L. enrolled R.L. and J.L. in defendant U.S.D. # 497, and the children began attending schools in the district. That same month, D.L. began renting an apartment at 530 Eldridge in Lawrence, Kansas, located inside the boundaries of the defendant U.S.D. # 497. At the same time, D.L. also owned a house located at 1124 South 48th Terrace, Kansas City, Kansas, within the boundaries of Turner U.S.D. # 202. Prior to August 1997, D.L. resided at the 1124 South 48th Terrace address. D.L. did not fill out an application for nonresident admission of her sons to defendant U.S.D. # 497 for the school year beginning in August 1997. On or about September 1, 1997, D.L. purchased a house located at 1823 North 134th Street, Kansas City, Kansas, within the boundaries of the Piper School District. D.L. stated she purchased the property because her job required nighttime child care.

Prior to the 1997–1998 school year, R.L. and J.L. were enrolled in Turner U.S.D. No. 202 located in Kansas City, Kansas. R.L. was classified as a special education student and received an education in accordance with the Individual Education Program (IEP) which was developed for him by the Turner School District. The 1996–1997 year was the final school year in which R.L. and J.L. were enrolled in and attended school in the Turner School District.

Before she enrolled her children in defendant U.S.D. # 497, D.L. had brought her children for various treatments at the University of Kansas and within the city of Lawrence, Kansas. R.L. and J.L. each received special education services while they attended schools in defendant U.S.D. # 497. Defendant U.S.D. # 497 states that R.L.'s disability required him to have constant one-on-one support while he was enrolled in the district, such that his enrollment would require defendant U.S.D. # 497 to hire a paraprofessional to provide that support. Defendant U.S.D. # 497 evaluated J.L. in February 1999, when he was attending Sunflower Elementary School, and determined that J.L. should be placed in special education under the area of "exceptionality or other health impaired." Both R.L. and J.L. received special education services while they resided in defendant U.S.D. # 497. During the years R.L. was enrolled in defendant U.S.D. # 497, he was classified as a special education student and received an appropriate public education in accordance with his IEP. J.L. also received an appropriate public education during the time he was enrolled in defendant U.S.D. # 497.

D.L. believed she was a resident of Lawrence because she rented the apartment there. D.L. stated that she rented the apartment in Lawrence because she wanted her children to get the best education possible, because she had brought her children to attend treatments in defendant U.S.D. # 497, and "had spent a great deal of time in Lawrence prior to moving there." (Pls.' Mot. Partial Summ. J. Attach. 4 at 24:8–12). Further, she believed her children could attend school in defendant U.S.D. # 497 in August 1997 because she was a Lawrence resident and taxpayer.

By September 2, 1997, D.L. rented a different apartment located at 2300 Wakarusa, Lawrence, Kansas. D.L. did not obtain a Kansas drivers' license indicating the Wakarusa address until January 6, 2000. Prior to that time, D.L.'s driver's

license stated her address was 1124 S. 48th Terr., Kansas City, KS. D.L. stated she changed her driver's license address to 2300 Wakarusa in January of 2000 because her old one was incorrect and she had neglected to change it. However, D.L. never changed her driver's license to reflect the property at 1823 North 134th Street in Wyandotte County. Further, she did not register to vote in Douglas County until January 2000. D.L. had telephone, gas and utilities connected to the 2300 Wakarusa apartment. D.L. immediately notified defendant U.S.D. # 497 of her change of address. D.L. never filed income tax returns showing a Lawrence address, and instead continued to file them with a Kansas City, Kansas address. D.L. has continued to register her vehicles in Wyandotte County, Kansas, rather than Douglas County.

### 2. The District Suspects Plaintiffs Are Nonresidents

In February 1998, Kevin Brothers, a district special education coordinator at the elementary school J.L. attended, informed defendant Eicher that he did not think J.L. resided within the district. Also during the 1997–1998 school year, Suzie Soyster, principal of J.L.'s elementary school, received two to three anonymous phone calls from a woman who told her she believed that J.L. did not reside in Lawrence, but rather Wyandotte County.[12] Defendant Eicher sent a letter to D.L. on February 13, 1998, in which he notified her that the district had received information which gave the district reason to question the children's residence, and asked to confirm her legal address. The letter did not ask D.L. to do anything regarding her residency. Defendant Eicher sent the letter to both the Lawrence and Kansas City, Kansas addresses. Defendant Eicher testified that he sent the letter because of the anonymous phone call received by Ms. Soyster and because of the statements by Mr. Brothers. After defendant Eicher sent the letter, Mr. Brothers told defendant Eicher that D.L. had told him in a telephone conversation that she lived in the district. Defendant Eicher never met with or spoke to D.L.

Defendant Eicher testified that in December 1999, Cleo Langley, the Deputy Clerk of the Board of Education and Administrative Assistant to the Superintendent of Schools, told him she had received a telephone call from an anonymous caller who informed her that R.L. and J.L. were residents of Kansas City, Kansas and were driven each day from their home in Kansas City, Kansas to their respective schools in the District.[13] According to an e-mail pro-

---

**12.** Plaintiffs object to the statements of defendant Eicher and Suzie Soyster regarding what they were told by Kevin Brothers and the anonymous caller, respectively, as hearsay. Federal Rule of Evidence 801(c) provides that hearsay includes only statements which are offered to prove the truth of the matter asserted. The court finds that the statements are not hearsay, because defendants do not offer them to prove that what Kevin Brothers or the caller said was true. Rather, they are offered to explain why the district began its investigation of the plaintiff children's residence.

**13.** Plaintiffs object to the statement of defendant Eicher regarding what he was told by Cleo Langley as hearsay. The court finds that the statement is not hearsay, because defendant does not offer it to prove what Ms. Langley told him was true; rather, it is offered to explain why defendant Eicher took further action to investigate plaintiffs' residency. Plaintiffs also object to Ms. Langley's statement on the grounds that she had no independent recollection of her conversations with the anonymous callers. The court finds that this objection does not affect the admissibility of Ms. Langley's statement for the purpose of showing the then-existing state of mind of defendant Eicher. Fed.R.Evid. 803(3). Regardless of whether it is true that Ms. Langley received the telephone calls, Defendant Eicher initiated surveillance of R.L.

duced by defendant U.S.D. # 497 on May 25, 2001, Ms. Langley did not identify the caller as a neighbor from Kansas City, Kansas. Ms. Langley has no independent recollection of this event.

Based upon this information, defendant Eicher consulted with the then-superintendent of defendant U.S.D. # 497, Kathleen Williams, and retained a private investigative firm to conduct videotape surveillance of R.L. and J.L. at a cost of $5,000 or $6,000. The purpose of the surveillance was to obtain information from which the district could determine whether the children were residents. Defendant Eicher instructed the investigators only to find information regarding where R.L. lived and where he woke up in the morning. Matthew Gabriel, the investigator hired by the district, conducted surveillance of the plaintiffs on November 29–30, 1999. Mr. Gabriel conducted the videotape surveillance while he was parked in a vehicle on a public residential street. He remained on public property throughout the surveillance, and all videotaped footage was obtained while the plaintiffs were outside their residence or within a vehicle.

Defendant Eicher viewed the surveillance tapes, which showed D.L., on some occasions, and P.P. on others, transporting R.L. and J.L. from their respective schools in defendant U.S.D. # 497 to a house in Kansas City, Kansas. The tapes also show the children being transported in the morning from the same house in Kansas City, Kansas to their respective schools in defendant U.S.D. # 497. The tapes do not follow D.L. or P.P. after leaving the school in the morning to determine how or where they spent the day. According to defendant Eicher, it was not important where D.L. and P.P. spent the day. Defendant Eicher stated the district's residency policy defines residence by where the child

"lays his head at night." The residency policy is not part of defendant U.S.D. # 497's written policies. Plaintiffs claim that, after dropping off the children, D.L. and P.P. would return to their apartment located at 2300 Wakarusa in Lawrence to sleep and take care of personal and work-related business.

### 3. The District Acts and Plaintiffs Respond

In or about November 1999, defendant Eicher consulted Rod Beiker, an attorney with the Kansas State Department of Education. Mr. Beiker advised defendant Eicher that a student's residence is determined by where the student sleeps at night. Defendant Eicher concluded, based upon the information provided to him from Mr. Beiker and the information obtained as a result of the private investigation, that neither R.L. nor J.L. was a resident of the district.

On December 3, 1999, counsel for defendant U.S.D. # 497 sent a letter to D.L. and P.P. to notify them that the district had determined that R.L. and J.L. were attending schools in the district even though D.L. and P.P. were not residents of the district. The letter stated that the children's attendance therefore violated Kansas law. The district demanded that D.L. and P.P. immediately withdraw the children from the district and enroll them either in the school district in which they resided, or in a private school of their choosing. The letter advised D.L. and P.P. that the district would take legal action if the demand was not met.

On January 4, 2000, defendant Eicher sent a letter to D.L. and P.P. informing them that January 13 of that year, the end of the first semester, would be the last day

---

and J.L. based upon the information he received from Ms. Langley indicating that a

caller stated the children were not residents of the district.

in which the children could attend defendant U.S.D. # 497, and threatening legal action if they did not comply.

On January 12, 2000, an attorney for D.L. and P.P. requested a due process hearing under federal and state special education laws on behalf of the children. The school district denied plaintiffs' request for a due process hearing.[14]

Defendant Eicher sent a notice to D.L. and P.P. on January 13, 2000, indicating that the children would "receive no educational services from [defendant U.S.D. # 497] as long as they are not eligible for such services." (*Id.* Attach. 16). Further, the letter stated that D.L. and P.P. "are not authorized to enter upon any premises" of defendant U.S.D. # 497, and that if they did so, they "may expect to be subject to prosecution for criminal trespass." (*Id.*) In his deposition testimony, defendant Eicher stated he did not recall sending the notice.

On January 18, 2000, counsel for plaintiffs at the time, Ms. Urbom, stated that plaintiffs would "immediately conform their activities to the stated definition of 'residence,' since they have already been in substantial compliance as regards where the stepfather sleeps (during the day because of their work)."[15] (Defs.' Mot. Summ. J. Attach. 17). Further, Ms. Urbom stated that Kan. Stat. Ann. 77–201(23) "chooses sleeping as the determining characteristic of residence."[16] (*Id.* Attach. 16).

On January 20, 2000, Ms. Urbom wrote to Mr. Hatley, and stated the plaintiffs "were conforming their schedule to permit both [D.L.] and the boys to sleep at their Lawrence address, in order to meet the statutory requirements for residence." (*Id.* Attach. 19).

D.L. executed an Affidavit of residency on January 24, 2000, in which she certified that R.L. was residing with her at 2300 Wakarusa Drive on a full-time basis. Further, she stated that she was providing the major portion of the financial support of R.L. The school district allowed D.L.'s children to return to school after this affidavit was executed. D.L. does not contend that defendant U.S.D. # 497 denied

---

**14.** Plaintiffs object to defendants' proffer of a letter dated January 14, 2000 in which Mr. Hatley informed plaintiffs that the district was denying their request for the hearing because the children were nonresidents, and inviting plaintiffs' attorney at the time to present contrary authority. Plaintiffs argue that the letter is hearsay, and that it was offered in the scope of settlement negotiations. Fed.R.Evid. 408, 801, & 802. The court finds that the letter is not hearsay because it was the statement of the defendants' agent, Mr. Hatley, made concerning a matter within the scope of the agency, and made during the existence of the agency relationship. Fed.R.Evid. 801(d)(2)(D). Even though the court has granted defendants' motion to strike Mr. Hatley from plaintiffs' final witness list, this does not preclude the court from considering on summary judgment Mr. Hatley's statement contained in the letter. Fed.R.Evid. 56(e). Further, the court finds that there is no basis to conclude that the letter was part of any settlement negotiations between the parties.

The plaintiffs' objection regarding Rule 408 is therefore overruled.

**15.** Over plaintiffs' objection, the court finds that the January 18, 2000 and January 20, 2000 letters are admissible under the admission of a party-opponent exception to the hearsay rule. Fed.R.Evid. 801(d)(2)(D). Ms. Urbom was, as plaintiffs' attorney at the time, the agent of the plaintiffs and spoke concerning a matter within the scope of the agency relationship, and the statement was made during the existence of the relationship. The court overrules plaintiffs' objection that the letters are inadmissible under Rule 408 because it was made in the context of settlement negotiations, because there is no discussion of settlement in the letter.

**16.** The court overrules plaintiffs' objection that this testimony is hearsay, under the admission of a party-opponent exception to the hearsay rule. Fed.R.Evid. 801(d)(2)(D).

her children educational services after she executed the affidavit of residency in January 2000.

On January 13, 2000 and January 14, 2000, R.L. and J.L. were absent from school because D.L. and P.P. were sick, and were therefore unable to transport the children from Kansas City to Lawrence for school. R.L. did not sleep at the apartment located within defendant U.S.D. # 497 at any time before the affidavit was executed. In or about January 2000, R.L. and J.L. each spent approximately one week sleeping at an apartment rented by D.L. in Lawrence, which was in defendant U.S.D. # 497's boundaries. R.L. stopped sleeping at the Lawrence apartment about a week after the affidavit was executed and resumed sleeping at his home in Kansas City, Kansas. After D.L. executed the affidavit, she stayed with her children at 2300 Wakarusa for about a week. Because of R.L.'s worsening condition, D.L. allowed R.L. to stay in Kansas City, Kansas with D.L.'s parents or brothers at night. D.L. did not inform any district employee when R.L. and J.L. stopped sleeping at the Lawrence apartment, because, she claims, she was not asked the question and was not told to report where either she or the children slept.

On March 15–16, 2000, and March 27–29, 2000, the district again conducted videotaped surveillance of the plaintiffs. Based upon this investigation, the district concluded that R.L. and J.L. were not residing within the district.

### 4. The State Court Action

Defendant U.S.D. # 497 filed a lawsuit against D.L. and P.P. in Douglas County District Court on April 18, 2000, more than two years after the February 13, 1998 letter sent by defendant Eicher to D.L. The petition alleged fraud and requested injunctive relief. The minor plaintiffs were not specifically identified, but were referred to by their initials throughout the petition. Plaintiffs filed documents in the Douglas County case that contained the full names of R.L. and J.L. Plaintiffs did not move to have the court seal the file in that case. D.L. cannot recall any disclosures by any district representative to the news media of personally identifiable information, beyond the content of the Douglas County petition itself. Plaintiffs state they were placed in a false light when a newspaper reported on the district's lawsuit. Plaintiff D.L. is not aware of any press releases or other measures that the district took to publicize the filing of the lawsuit.

Defendant Eicher stated that Ms. Williams, the former superintendent of schools, made the final decision to file the lawsuit. Defendant Eicher did not seek approval for the lawsuit from the Board of Education until the Board, after reading about the lawsuit in the local newspaper, expressed some concern that it had not been approved. However, the Board of Education for U.S.D. # 497 subsequently ratified the lawsuit at its August 14, 2000 meeting. Shortly after the lawsuit was filed, on April 20, 2000, an article appeared in the *Lawrence Journal–World* discussing the suit.

### 5. R.L. and J.L. Stop Attending Defendant U.S.D. # 497

R.L. and J.L. stopped attending defendant U.S.D. # 497's schools from January 13–24, 2000. Plaintiffs contend that R.L. and J.L. stopped attending the district's schools because they were, in effect, expelled. Plaintiffs further contend that there is no legal provision for forcible removal of enrolled pupils except expulsion. D.L. does not claim defendant U.S.D. # 497 denied her children educational services after she executed the affidavit of residency in January 2000. Rather, D.L.

claims that her children were denied educational services from January 13 to 24, 2000.

At some point after defendants filed their state court action in April 2000, D.L. withdrew her children from defendant U.S.D. # 497 and enrolled R.L. and J.L. in the Piper School District. The date upon which D.L. withdrew her children from defendant U.S.D. # 497 is unclear form the record. On the Piper School District enrollment form, which is unsigned and undated, D.L. represented that her address was 1823 North 134th Street, Kansas City, Kansas. R.L. and J.L. are receiving an appropriate education in the schools that they currently attend. D.L. lives between two and ten miles from the Piper school district middle school that J.L. presently attends.

### 6. Nonresident Admissions Procedure

D.L. did not fill out an application for nonresident admission of her sons to defendant U.S.D. # 497 for the school year beginning in August 1997, and has never applied for admission to defendant U.S.D. # 497 as a nonresident. Defendant U.S.D. # 497's Board of Education Policy # 602.8 permits a nonresident student to apply for admission through the district office. The policy states that "[a] parent or guardian must request admission by completing a district application for nonresident admission." (Defs.' Mot. Summ. J. Attach. 6). Further, the policy provides that "[a]ll applications shall be considered on an equal basis and no student's request shall be refused on the basis of race, gender, religion, or ethnicity." (*Id.*).

The affidavit of residency executed by D.L. in this case was forwarded to defendant Eicher. After he received the Affidavit of residency, defendant Eicher decided to conduct further surveillance and investigation, because, based upon the information he received concerning anonymous calls, he did not believe D.L. was telling the truth. However, defendant Eicher did not conduct this surveillance until March 2000, approximately two months after D.L. executed the affidavit. In the seven years he had been with defendant U.S.D. # 497, defendant Eicher had never conducted further investigation of an affidavit of residency he believed to be false. At the same time, however, defendant Eicher testified that another incident occurred in which he believed that a foster parent had lied about a child's address. Defendant Eicher then contacted the foster parent and the Kansas Department of Social and Rehabilitative Services, and informed them that the child was no longer allowed to stay in the school district. The only occasion on which defendant U.S.D. # 497 had ever engaged a private detective agency to investigate the residence of a student was when the district was investigating plaintiffs.

Defendant Eicher testified that, besides the plaintiffs' situation and that of the foster child, there was only one other instance in which he did not believe that a special education student enrolled in the district did not actually reside in the district, and defendant Eicher then took steps beyond requesting an affidavit of residency. That student also was autistic.

Having established the relevant factual background, the court turns to its analysis of defendants' motion for summary judgment and plaintiffs' motion for partial summary judgment. Prior to considering the merits of those motions, however, the court must consider whether plaintiffs have standing to pursue their claims in this action.

### B. Standing

### 1. Challenges to Nonresident Admissions Policy

■■■■ Although defendants did not raise the issue of whether plaintiffs have

standing to challenge defendant U.S.D. # 497's nonresident admissions policy, the court must consider *sua sponte* whether a party has standing. *Essence, Inc. v. City of Fed. Heights,* 285 F.3d 1272, 1280 (10th Cir.2002). Article III limits federal judicial power to the adjudication of cases or controversies. *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To have Article III standing, a plaintiff must establish three elements:

> (1) "[I]njury in fact"—meaning "the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal relationship between the injury and the challenged conduct"—meaning that the "injury fairly can be traced to the challenged action of the defendant"; and (3) "a likelihood that the injury will be redressed by a favorable decision'—meaning that the prospect of obtaining relief from ... a favorable ruling is not too speculative."

*Buchwald v. Univ. of N.M. Sch. of Med.,* 159 F.3d 487, 492–93 (10th Cir.1998) (quoting *Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville,* 508 U.S. 656, 663–64, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993)). As the party invoking federal jurisdiction, plaintiffs bear the burden of establishing the elements of standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Plaintiffs challenge defendant U.S.D. # 497's nonresident admissions policy, asserting that it violates the Equal Protection and Due Process Clauses, the ADA, and § 504 of the Rehabilitation Act. Plaintiffs seek (1) a declaratory judgment that their rights protected by these laws were violated; (2) compensatory and punitive damages; (3) injunctive relief in the form of an order to school officials "to permit the minor children to attend school in a non-hostile environment free from defendants' unlawful harassment"; (4) an order that school officials must include discrimination against disabled students as conduct prohibited by its admissions policy; (5) "extra residential requirements not contained in state statutes or school board policies;" (6) costs, and (7) attorneys' fees. (Compl. at 9–12).

■ A plaintiff has standing to recover compensatory damages for injuries caused by an educational institution that rejected her under an allegedly unconstitutional admissions policy. *Buchwald,* 159 F.3d at 493. Such a plaintiff also has standing to seek a prospective injunction ordering the educational institution to admit her. *Id.* However, plaintiffs do not contend they have applied to the district for admission under the nonresident admissions policy. Therefore, they cannot claim that they were injured because defendant U.S.D. # 497 refused them admission pursuant to the policy. Further, to the extent that plaintiffs allege the nonresident admissions policy is facially unconstitutional, although "the rules for standing are less stringent for a facial challenge to a statute, a plaintiff must still satisfy the injury-in-fact requirement." *PeTA, People for the Ethical Treatment of Animals v. Rasmussen,* 298 F.3d 1198, 1203 (10th Cir.2002) (citation omitted). As such, the court finds that plaintiffs have failed to show they endured an actual, imminent, concrete, and particularized injury resulting from defendant U.S.D. # 497's nonresident admissions policy.

■ Further, plaintiffs cannot obtain prospective injunctive relief pursuant to their claims that the nonresident admissions policy violates federal law. In the admissions context, forward-looking injunctive or declaratory relief is not available to a plaintiff who cannot "demonstrate the 'imminence' of her injury by making

'an adequate showing' that she will reapply to [the educational institution] and will thus be evaluated under the disputed policy again 'in the relatively near future.'" *Buchwald,* 159 F.3d at 494 (quoting *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 211, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995)). "A plaintiff is required only to allege concrete plans; he is not required to successfully execute those plans." *Roe No. 2 v. Ogden,* 253 F.3d 1225, 1229 (10th Cir.2001) (citing *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130; *Buchwald,* 159 F.3d at 493). Here, however, plaintiffs have not asserted that they would seek admission under defendant U.S.D. # 497's nonresident admissions policy. In fact, plaintiffs continue to maintain that they are residents of the district.

Accordingly, the court finds that plaintiffs do not have standing to pursue prospective injunctive relief regarding the district's nonresident admissions policy. Moreover, because the court construes plaintiffs' Rehabilitation Act and ADA claims as based entirely upon the nonresident admissions policy,[17] those claims are hereby dismissed without prejudice. Plaintiffs' Due Process and Equal Protection claims are dismissed without prejudice to the extent that they are based upon the nonresident admissions policy.

Plaintiffs do, however, have standing to the extent their claims stem from defendants' denial of a due process hearing which plaintiffs requested. Under the standard enumerated above, plaintiffs have articulated that they suffered an actual, concrete, particularized injury when defendant U.S.D. # 497 denied their request for a hearing on the grounds that plaintiffs were nonresidents.

### 2. Standing of P.P.

■ Defendants assert that P.P. lacks standing because he has no legal relationship with D.L., R.L., or J.L. P.P. is not a parent or guardian of R.L. and J.L., and is not married to D.L. The court determines P.P.'s standing only in the context of plaintiffs' remaining IDEA and procedural due process claims. Plaintiffs cite no authority for the proposition that IDEA guarantees rights to individuals who are not parents or guardians of children. Further, the statute extends procedural safeguards only to "parents." 20 U.S.C. § 1415. Consequently, the court finds P.P. does not have standing to sue under IDEA.

Further, plaintiffs have not shown that P.P. was injured by defendant U.S.D. # 497's denial of a due process hearing. Although plaintiffs allege P.P. may have had standing due to his association with J.L., R.L., and D.L., there is no showing that, in this case, P.P. was injured due to that relationship. There is no showing that P.P. even requested a hearing or would have attended a hearing had defendants granted one. The January 12, 2000 letter requesting a hearing referred only to D.L. Accordingly, the court thus finds that P.P. has failed to allege sufficient injury for standing purposes. Defendants' Motion for Summary Judgment is granted in its entirety as to P.P.

### C. IDEA

Plaintiffs allege defendants violated the procedural guarantees of IDEA in several respects. Specifically, plaintiffs claim that defendants violated IDEA by denying plaintiffs' request for a due process hearing and failing to provide plaintiffs with

---

**17.** Plaintiffs argue that defendants violated the ADA by taking into account R.L. and J.L.'s disabilities prior to denying them admission. The court construes plaintiffs' argument as attacking the nonresident admissions policy, because defendant U.S.D. # 497 permitted the plaintiffs to enroll when they first applied to the district, and plaintiffs never attempted to enroll as nonresidents.

notice of their appeal rights. Plaintiffs also contend that defendants suspended plaintiffs R.L. and J.L. for a period of time in January 2000, and that this constituted a "change in placement" for which IDEA requires advance parental approval. Plaintiffs contend that this suspension constituted a denial of a free appropriate public education (FAPE) to which R.L. and J.L. were entitled under IDEA.

Thus, plaintiffs seek a declaratory judgment that defendants violated their rights under IDEA, an award of compensatory education for the wrongful expulsion of the children, "equitable relief including enjoining the defendants' refusal to abide by the statutory requirements of IDEA, specifically including the Procedural Safeguards which protect families from the abuses perpetrated by defendants; and such other relief as the court deems just and equitable." Before examining plaintiffs' IDEA claims on the merits, the court must first determine whether they are properly before the court.

### 1. Mootness

 Defendants assert that plaintiffs are not entitled to prospective relief ordering defendants to hold a due process hearing, because plaintiffs R.L. and J.L. are no longer enrolled in the district. A federal court must dismiss an action when a case or controversy ceases to exist. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937). A case becomes moot when the issues presented are no longer live and the parties lack a legally cognizable interest in the outcome. *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). Several courts have determined that, when a student requests a hearing *after* changing school districts, her right to challenge prior educational services in the previous district is mooted. *E.g., Thompson v. Bd. of Special Sch. Dist. No. 1*, 144 F.3d 574, 579 (8th Cir.1998). In this case,

however, plaintiffs requested a due process hearing while J.L. and R.L. were enrolled in defendant U.S.D. # 497.

 Moreover, several courts have recognized that IDEA claims may fall within the "capable of repetition yet evading review" exception to the mootness doctrine. A case falling into this exception must contain two elements: (1) the duration of the case must be too short to allow a determination on the merits; and (2) the particular plaintiff must have a reasonable expectation of suffering from the same harm again. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). This exception applies when, as here, a parent removes his or her child from a school district and *simultaneously* seeks judicial relief from decisions of the school district. *E.g., Lee v. Biloxi Sch. Dist.*, 963 F.2d 837, 839 (5th Cir.1992) ("[A parent's] refusal to sacrifice critical years of her daughter's development pending time-consuming review proceedings does not render her case moot. To hold otherwise effectively would insulate EHA claims from judicial review."). In addition, there is a reasonable probability that plaintiffs would seek resident admission to defendant U.S.D. # 497, that the district would deny them admission, and that plaintiffs would again request a due process hearing. The record reflects that D.L. and P.P. continue to own the Lawrence apartment and that D.L. believed her children would receive the best education in defendant U.S.D. # 497. Accordingly, the court finds plaintiffs' IDEA claims are not moot, but rather within the "capable of repetition, yet evading review" exception to the mootness doctrine.

### 2. Exhaustion of Administrative Remedies

 Defendants contend plaintiffs' IDEA claims cannot survive summary

judgment, because plaintiffs failed to exhaust the available administrative remedies when they did not appeal to the Kansas State Board of Education (State BOE) defendant U.S.D. # 497's denial of their request for a hearing prior to seeking review in this court. Plaintiffs counter that their failure to appeal to the State BOE was caused by defendants' failure to comply with IDEA's requirement that parents must be given notice of their appeal rights. Further, they contend that they were not required to exhaust administrative remedies, because exhaustion would have been futile. To address the parties' arguments, the court must first consider the nature and purpose of the procedural safeguards and exhaustion requirements of the IDEA.

Congress enacted the predecessor of IDEA, the Education of the Handicapped Act (EHA) in 1975. IDEA's primary purpose is "to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs ... [and] to ensure that the rights of children with disabilities and the parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A)-(B). To this end, any state that elects to receive federal funding under IDEA must provide a "free appropriate public education" to all children with disabilities residing in the state between the ages of three and twenty-one, "including children with disabilities who have been suspended or expelled from school." *Id.* § 1412(a)(1)(A). States may receive assistance under IDEA if they adopt certain procedural safeguards, *id.* § 1412(a)(6), and a public school board of education, or "local educational agency," may receive financial assistance if it has adopted procedures compliant with those established by the state pursuant to IDEA. *Id.* §§ 1401(15), (28), 1413(a)(1).

Among the procedures IDEA guarantees is the right of parents to an impartial due process hearing regarding "any complaint" about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id.* § 1415(f). Under the state regulations implementing this provision, "the agency directly responsible for the education of the child" is required to provide the due process hearing. Kan. Admin. Reg. 91–40–28(c). In this case, defendants denied plaintiffs' request for a due process hearing on the grounds that plaintiffs were not residents of the district.

Defendants argue that plaintiffs failed to exhaust their administrative remedies under the IDEA because they did not seek review of defendants' denial of a due process hearing before the State BOE. IDEA provides that a party "aggrieved by the findings and decision rendered in [a hearing required by 20 U.S.C. § 1415(f)] may appeal such findings and decision to the State educational agency. Such agency shall conduct an impartial review of such decision. The officer conducting such review shall make an independent decision upon completion of such review." *Id.* § 1415(g). The Kansas statute which implements IDEA provides that the due process hearing must be conducted at the local level by a hearing officer, with the right to appeal to the State BOE. Kan. Stat. Ann. §§ 72–973, 72–974.

██ Plaintiffs claim that failure to exhaust administrative remedies is an affirmative defense which can be waived. The court disagrees. A party's failure to plead compliance with IDEA's statutory exhaustion requirements precludes the court from exercising subject matter jurisdiction. *See Cudjoe,* 297 F.3d at 1064 ("We believe that both the language and the policy of the IDEA suggest that if a stu-

dent with a disability seeks to bring a claim for educational injuries, then he must plead and show either that he has exhausted his administrative remedies under the IDEA or that the relief he is seeking is not available under the IDEA.").

 However, exhaustion of the available administrative remedies is not required when it would be futile, would fail to provide adequate relief, or when an agency has adopted a policy of general applicability that is contrary to the law. *Honig v. Doe,* 484 U.S. 305, 327, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Ass'n for Cmty. Living v. Romer,* 992 F.2d 1040, 1044 (10th Cir.1993). Plaintiffs, as the party seeking to avoid exhaustion, bear the burden to show that one of these exceptions applies. *Id.* at 1044.

Plaintiffs argue, *inter alia,* that exhaustion would be futile because defendants refused to provide the due process hearing plaintiffs requested. The court agrees. The court is persuaded that requiring plaintiffs to exhaust defendant U.S.D. # 497 officials' denial of a due process hearing would be futile. Defendants cite no law indicating that the *denial* of a due process hearing by a local school board must be appealed to the State BOE, and the court found no authority for this proposition. The plain language of IDEA appears to assume that a local educational agency must hold a hearing before an appeal is required. *See* 20 U.S.C. § 1415(g) ("If the hearing required by subsection (f) of this section is conducted by a local educational agency, any part aggrieved by the findings and decision *rendered in such a hearing* may appeal such findings and decision to the State educational agency.") (emphasis added). In this case, because no due process hearing was held, there are no findings and no decision of the local educational agency that would be appealable. Further, defendant U.S.D. # 497 issued no findings and created no record in its denial of a hearing. The court believes it is incongruous for defendants to argue that plaintiffs must have exhausted their administrative remedies under IDEA in one breath, when at the same time defendants argue that plaintiffs have no right to a hearing. *Padilla v. Sch. Dist. No. 1,* 35 F.Supp.2d 1260, 1265 (D.Colo.1999), *rev'd on other grounds,* 233 F.3d 1268 (10th Cir.2000). Accordingly, the court finds plaintiffs were not required to exhaust their administrative remedies prior to bringing suit under IDEA.

### 3. Authority of IDEA Hearing Officers

 Defendants argue that plaintiffs had no right to a due process hearing under IDEA, because questions of residency are outside the scope of IDEA hearing officers' jurisdiction. Defendants cite no persuasive legal authority. Rather, each case cited by defendants involved a situation in which a hearing officer was without authority to rule on plaintiff's claims because the claims were moot, not because the hearing officer lacked authority to decide the type of issue for which plaintiff sought review. *E.g., Smith v. Special Sch. Dist. No. 1,* 184 F.3d 764 (8th Cir.1999) (affirming decision of district court that hearing officer lacked jurisdiction when plaintiff no longer resided in the district in which he sought a hearing); *Thompson,* 144 F.3d 574 (same).

Further, the court's review of the Kansas administrative regulations pertaining to school district hearing officers does not indicate that questions of residency are outside the scope of a hearing officer's authority. To the contrary, due process hearing officers must be familiar with special education laws. A person can be qualified initially to become a due process hearing officer or review officer only if she (1) is a licensed attorney in good standing;

(2) passes written exams prepared by the state State BOE concerning special education laws and due process proceedings; and (3) completes a program sponsored or approved by the State BOE concerning due process hearing procedures and the role and responsibilities of a due process hearing officer. Kan. Admin. Reg. 91–40–29.[18] Though it is unclear whether Kansas residency law is included in the training, these requirements give rise to an inference that decisions regarding residency are within the scope of a hearing officer's jurisdiction because the officers must have legal training. The court rejects defendants' assertion that plaintiffs were not entitled to a due process hearing under IDEA because hearing officers lack jurisdiction to consider issues of residency.

### 4. Compensatory and Punitive Damages

Further, defendants argue plaintiffs have no claim for money damages under IDEA because, in defendants' view, the statute does not permit successful plaintiffs to collect compensatory and punitive damages. Because the Tenth Circuit has not held that compensatory damages are unavailable under IDEA, *Padilla*, 233 F.3d at 1274, the court declines to find that compensatory damages are unavailable under IDEA. Defendants argued that punitive damages were unavailable as a matter of law, because compensatory damages were unavailable under IDEA. Because the court finds that compensatory damages are available, the court rejects defendants' argument that punitive damages are unavailable.

### 5. Residency

The court finds plaintiffs have shown there is a genuine issue of material fact regarding whether (1) D.L. was a resident of defendant U.S.D. # 497 during January 13–24, 2000, and (2) whether R.L. and J.L. resided with D.L. inside the boundaries of defendant U.S.D. # 497 during January 13–24, 2000.

### 6. Loss of Substantive Benefits

■■■■ Defendants argue that their failure to provide a due process hearing does not create a cause of action under IDEA, because plaintiffs suffered no loss in substantive benefits. The Tenth Circuit has held that "[f]or an IDEA claim based on deprivation of a due process hearing and/or other procedures to be cognizable [it] must be linked with a consequent loss of substantive benefits." *T.S. v. Indep. Sch. Dist. No. 54*, 265 F.3d 1090, 1093 (10th Cir.2001), *cert. denied*, 535 U.S. 927, 122 S.Ct. 1297, 152 L.Ed.2d 209 (2002). "Procedural defects alone do not constitute a violation of the right to a FAPE unless they result in the loss of an educational opportunity." *Id.* at 1095.

■■■■ It is undisputed that after plaintiff D.L. executed her affidavit of residency on January 24, 2000, R.L. and J.L. received a FAPE. The court must therefore consider whether plaintiffs sustained a loss in substantive benefits when they were unable to attend school from January 13–24, 2000, after defendant Eicher informed plaintiffs they could not attend school "as long as they were nonresidents," and the district denied them a hearing. Defendants claim that their denial of a due process hearing was not the cause in fact of plaintiffs'

---

**18.** This regulation also provides that a person who "was on the list of qualified due process hearing officers maintained by the state State BOE" prior to the date upon which the regulation became effective shall remain eligible to serve as a due process hearing officer if she completes the continuing education requirements required for new officers. Kan. Admin. Reg. 91–40–29.

failure to attend school on these days, because plaintiff D.L. stated that she and P.P. were too sick to drive the children to school on those days. The court believes plaintiffs have shown a genuine issue of material fact regarding whether defendants' denial of a due process hearing resulted in a loss of substantive benefits when R.L. and J.L. were absent from school January 13–24, 2000.

Accordingly, the court denies defendants' motion for summary judgment as to plaintiffs' IDEA claims. Plaintiffs' motion for partial summary judgment on their IDEA claim is also denied. The court turns to plaintiffs' arguments under the Due Process and Equal Protection Clauses.

### D. 42 U.S.C. § 1983

At the outset, the court notes that it is "beyond dispute that a plaintiff need not exhaust state administrative remedies before filing suit in federal court under § 1983." *Tonkovich v. Kan. Bd. of Regents,* 159 F.3d 504, 519 (10th Cir.1998). The court already found that plaintiffs were not required to exhaust their administrative remedies. However, even if there were such a requirement in these circumstances, the court finds that plaintiffs' failure to appeal defendants' denial of a due process hearing to the State BOE would not divest the court of subject matter jurisdiction over plaintiffs' § 1983 claims. The court therefore turns to merits of plaintiffs' claims.

### 1. Procedural Due Process

To state a claim for a violation of procedural due process, plaintiffs must show that defendants deprived them of a liberty or property interest without due process of law. Even though "there is no constitutional right to an education at public expense," a student's legitimate entitlement to a public education "as a property interest which is protected by the Due Process Clause ... may not be taken away ... without adherence to the minimum procedures required by that clause." *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The Supreme Court in *Goss* determined that Ohio state law entitled eligible students to school attendance, thus creating a property interest. *Id.* at 573–74, 95 S.Ct. 729. The Court also held that school suspensions implicate liberty interests under the Due Process Clause. *Id.* at 574–75, 95 S.Ct. 729.

Similarly, Kansas state law entitles "any child who has attained the age of eligibility for school attendance [to] attend school in the district in which the child lives if(1) the child lives with a resident of the district and the resident is the parent, or a person acting as parent of the child." Kan. Stat. Ann. § 72–1046(a). Defendants' justification for refusing to provide plaintiffs with a due process hearing was that plaintiffs were nonresidents, and that, as a result, state law did not guarantee them a property or liberty interest in continued education by defendant U.S.D. # 497.

In examining this argument, the court expressly declines to rule on the question whether plaintiffs were residents of defendant U.S.D. # 497, because it is not necessary to the finding of a constitutional violation in this case and because the court has found the existence of a genuine issue of material fact regarding plaintiffs' residency. The court rejects defendants' argument that, because plaintiffs were nonresidents, they could not seek review of defendants' finding that plaintiffs were nonresidents. If accepted by the court, defendants' argument would preclude any student from seeking review of a school district's determination that she was not a resident, eliminating students' rights to procedural due process in this circumstance. "The root requirement of the Due Process Clause is that an individual be

given an opportunity for a hearing *before* he is deprived of any significant protected interest." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Thus, even if defendants are correct in their assertion that plaintiffs were not residents of the district, plaintiffs had a property and liberty interest in continuing to attend the district until they had an opportunity to be heard on the residency issue.

 Having found the presence of a property and liberty interest, the court must examine what due process is required. To make this determination, the court must balance three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Applying this test in the context of disciplinary suspensions, the Supreme Court has held that:

> [T]here can be no doubt that at a minimum [the Due Process Clause] requires that deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the case. The fundamental requisite of due process of law is the opportunity to be heard.... At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing.

*Goss,* 419 U.S. at 574–75, 95 S.Ct. 729 (citations omitted).

While the Supreme Court recognized that extensive predeprivation process is not required because discipline is essential to the orderly functioning of schools, it stated that at least some predeprivation procedural due process, including the right to present the student's version of events, is required. *Id.* at 581, 95 S.Ct. 729 (finding that, for suspensions often days or less, the Due Process Clause requires "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story"). Although *Goss* and many other procedural due process cases examine suspensions for disciplinary reasons, the court finds that such cases are persuasive in this context, in which defendants allegedly suspended plaintiffs R.L. and J.L. because defendants believed the children were nonresidents.

Applying the first factor of the *Mathews* balancing test, therefore, the court finds that the private interest that would be affected by defendants' action, plaintiffs' suspension from school, is significant even though plaintiffs were absent from school for a relatively short duration. As noted above, plaintiffs were suspended from school January 13, 2000 and returned to school January 24, 2000. D.L. stated that D.L. and P.P.'s illnesses precluded them from being able to transport the children to school on January 13 and 14. Accordingly, plaintiffs missed only five school days, one of which could have been a holiday. Nevertheless, the Supreme Court has determined that "as long as a property deprivation is not de minimis, its gravity is irrelevant to the question whether account must be taken of the Due Process Clause." *Goss,* 419 U.S. at 576, 95 S.Ct. 729 (finding a 10–day suspension from school is not de minimis). Although the Court recognized that suspension is a milder deprivation than expulsion, it also stated:

"Education is perhaps the most important function of state and local governments," and the total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for 10 days, is a serious event in the life of the suspended child. Neither the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary.

*Id.* at 576, 95 S.Ct. 729 (citing *Brown v. Bd. of Educ.*, 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873 (1954)). The court believes the rationale in *Goss* is applicable here, where J.L. and R.L. were absent from school for five days, and defendant U.S.D. # 497's letter suspending the students contemplated a suspension for an indefinite period of time, i.e., for "as long as plaintiffs were not residents" of the district. Defendants' denial of a due process hearing thus implicated plaintiffs' property and liberty interests.

The court must next determine "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335, 96 S.Ct. 893. Because plaintiffs had no opportunity to present evidence that they were residents of the district, the district's decision was based upon incomplete information. Thus, the risk that the district erred in determining plaintiffs' residency is high. Affording plaintiffs a due process hearing clearly would have been valuable in finding the truth regarding plaintiffs' residency.

Finally, the court weighs the defendants' interest, including the "fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* Defendants do not argue that providing a due process hearing prior to suspending allegedly nonresident students would be burdensome. Further, there is no evidence in the record regarding the number of suspensions of nonresident students the district conducts in a given year. On the record before it, the court finds that defendants have failed to show that providing predeprivation due process hearings to allegedly nonresident students would be burdensome.

Balancing these factors, the court finds that plaintiffs' interest in predeprivation process and the risk of erroneous denial of plaintiffs' rights were significant, while the burden defendants would have endured in offering a due process hearing was not substantial. *Mathews* thus compels the court to find that defendants' failure to provide plaintiffs with a predeprivation due process hearing violated plaintiffs' rights under the Due Process Clause. The court therefore grants plaintiffs' Motion for Partial Summary Judgment to the extent plaintiffs allege that defendants violated plaintiffs' rights to procedural due process.[19]

Further, the court notes that the record reflects the undisputed fact that defendant U.S.D. # 497 denied plaintiffs' request for

---

**19.** For clarity, the court notes that it grants in part plaintiffs' arguments in section IV.G of their Motion for Partial Summary Judgment. The court clarifies that plaintiffs denominate the entire paragraph as seeking "summary judgment on their claim for declaratory relief based on substantive due process," when plaintiffs are in fact seeking, in part, summary judgment for procedural due process stemming from defendants' denial of plaintiffs' property and liberty interest in their education. The court does not grant summary judgment to the extent the rest of the paragraph concerns substantive due process—i.e., the arguments that defendants infringed upon rights plaintiffs allege to be fundamental—the right to education, to travel, and "to have as many residences as they desire."

a due process hearing through its counsel. The record does not indicate that defendant Eicher was responsible for, or in any manner involved in the denial of a due process hearing. Accordingly, defendants' Motion for Summary Judgment is granted as to defendant Eicher regarding the procedural due process claim.

### 2. Substantive Due Process and Equal Protection

■ Plaintiffs claim that their substantive rights under the Due Process Clause were infringed when defendants "sued D.L. and P.P. [in the state court action] for attempting to establish a residence within the boundaries of the school district solely because of the fact that both of D.L.'s children have disabilities and, in particular, because one of her children has autism." (Mem. in Support of Pls.' Mot. Partial Summ. J. at 33). Plaintiffs contend defendants' lawsuit unconstitutionally burdened plaintiffs' fundamental rights to education, to travel, and to have "as many residences as they desire and to be able to select the residence of their choice without interference or harassment by defendants." According to plaintiffs, because defendants' lawsuit has implicated plaintiffs' fundamental rights, it is constitutional only if it survives strict scrutiny analysis.

The court finds plaintiffs have not shown that defendants' action implicated any fundamental right. The court first examines plaintiffs' claim that plaintiffs had a fundamental right to an education under Kansas law. The Supreme Court has "not yet definitively settled the questions whether a minimally adequate education is a fundamental right and whether a statute alleged to discriminatorily infringe that right should be accorded heightened equal protection review." *Papasan v. Allain,* 478 U.S. 265, 285, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *see also San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (rejecting

claim that education is a fundamental right). To determine the existence of a fundamental right, the court must assess whether a claimed right is explicitly or implicitly guaranteed by the Constitution. *Rodriguez,* 411 U.S. at 33, 93 S.Ct. 1278. Plaintiffs contend that, although the United States Supreme Court has not recognized that education is a fundamental right under the United States Constitution, Kansas law guarantees that education is a fundamental right. However, the Kansas Supreme Court has held that the Kansas Constitution does not guarantee that education is a fundamental right, and has thus applied the rational basis test to allegations of infringement of the right to education. *E.g., Unified Sch. Dist. No. 229 v. State,* 256 Kan. 232, 263, 885 P.2d 1170, 1190 (1994). The court declines to find that education is a fundamental right guaranteed by the United States or Kansas Constitutions.

■ Second, plaintiffs assert that defendants have burdened their right to travel. The United States Supreme Court has clearly recognized that the right to interstate travel is fundamental. *See United States v. Guest,* 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966). However, plaintiffs' right to interstate travel is not implicated on the record before the court. "The federal guarantee of interstate travel ... protects interstate travelers against two sets of burdens: 'the erection of actual barriers to interstate movement' and 'being treated differently' from intrastate travelers." *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 271, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993).

In the instant case, plaintiffs allege that their right to travel was infringed because defendants' actions prevented them from seeking to establish a residency in Lawrence, Kansas, while owning property in Kansas City, Kansas. Plaintiffs also con-

tend defendants burdened the right of plaintiffs to travel between Lawrence and Kansas City, Kansas, and to own dwellings in both places.

 Importantly, plaintiffs have alleged facts which could demonstrate only that defendants impaired plaintiffs' right to *intrastate* travel. Even if the court were to find that defendants burdened plaintiffs' ability to travel, "a purely intrastate restriction does not implicate the right of interstate travel." *Id.* at 277, 113 S.Ct. 753. Plaintiffs do not allege they were prevented from traveling outside the state of Kansas, or that they were treated differently from interstate travelers. Furthermore, upon its own review, the court has not located any state statutory or case law providing for a right to intrastate travel. Plaintiffs thus cannot state a claim that their constitutional right to interstate travel was impaired.[20]

Consequently, defendants' actions do not trigger strict scrutiny, but must merely survive rational basis analysis. Given the strength of the defendants' right of access to the courts and apparent good faith in bringing suit, the court finds that the district's action is rationally related to a legitimate governmental purpose and is therefore constitutional.

Plaintiffs also allege a vague Equal Protection argument that defendants discriminated against them on the basis of R.L. and J.L's disability by bringing the state court action. Even if plaintiffs could show that defendants brought suit *because of* plaintiffs' disabilities, governmental action that discriminates on the basis of disability is subject only to rational basis review. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

 "[I]f a law neither burdens a fundamental right nor targets a suspect class, [the court] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). The court first notes that this case does not implicate a "legislative classification." In any event, defendants assert they merely sought to avail themselves of the appropriate judicial processes in order to enforce their rights. The court finds that defendants had a legitimate governmental interest in pursuing the state court action against plaintiffs D.L. and P.P. The right of access to the courts is "grounded in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses." *Christopher v. Harbury,* 536 U.S. 403, 122 S.Ct. 2179, 2187 n. 12, 153 L.Ed.2d 413 (2002). Further, plaintiffs make no factual allegations that defendants brought the lawsuit in bad faith, to harass plaintiffs, or for any other improper purpose. The court thus finds that defendants' decision to sue plaintiffs in state court bears a rational relationship to defendants' legitimate governmental interest in pursuing their right to seek judicial redress. Defendants' Motion for Summary Judgment is granted as to plaintiffs' substantive due process and equal protection claims.

**E. State Tort Claims**

 Plaintiffs also bring a claim for invasion of privacy under state law. Defendants contend plaintiffs cannot bring this claim because they failed to comply with the notice requirements set out in the

---

**20.** The court rejects plaintiffs' claim that their fundamental right to have "as many residences as they desire and to be able to select the residence of their choice without interference or harassment by defendants," was infringed. Plaintiffs cite no authority for the proposition that the right to own multiple residences is fundamental.

Kansas Tort Claims Act (KTCA), Kan. Stat. Ann. § 75–6101 *et seq.* As set forth below, the court grants defendants' Motion for Summary Judgment as to plaintiffs' state law claims.

 Plaintiffs' claim for invasion of privacy is subject to the KTCA. *Cf. Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F.Supp. 279, 282 (D.Kan. 1995). Kan. Stat. Ann. § 12–105b requires that persons with tort claims give notice to a municipality before filing suit. Kan. Stat. Ann. § 12–105b(d); *Johnson v. Bd. of County Comm'rs*, 259 Kan. 305, 326, 913 P.2d 119, 134 (1996). Defendant U.S.D. # 497 is a "municipality" under the KTCA. Kan. Stat. Ann. § 75–6102a(b). Section 12–105b(d) provides that "[a]ny person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action." Kan. Stat. Ann. § 12–1056b(d).[21]

 The notice requirements of § 12–105b(d) are mandatory and are a condition precedent to bringing a tort claim against a municipality. *Tucking v. Bd. of Comm'rs*, 14 Kan.App.2d 442, 445, 796 P.2d 1055, 1057 (1990). Notice is required, both for claims against the municipality and for claims against individuals employed by the municipality who act within the scope of their employment. *King v. Pimentel*, 20 Kan.App.2d 579, 589, 890 P.2d 1217, 1225 (1995). Failure to comply with the notice requirements of § 12–105b(d) deprives the court of subject matter jurisdiction over tort claims raised

against a municipality. *Scheideman*, 895 F.Supp. at 282. Therefore, plaintiffs here bear the burden to establish that each plaintiff who maintains a tort claim against the defendant municipality and its employees acting within the scope of their employment has complied with § 12–105b(d)'s notice requirements.

Plaintiffs have failed to demonstrate that they complied with the notice requirements set forth in the KTCA prior to bringing their claim for invasion of privacy. Accordingly, defendants' Motion for Summary Judgment as to plaintiffs' invasion of privacy claim is granted.

## XII. Order

**IT IS THEREFORE ORDERED THAT** plaintiffs' Motion to Stay (Doc. 115) is denied as moot.

**IT IS FURTHER ORDERED THAT** defendants' Conditional Motion to Stay (Doc. 130) is denied.

**IT IS FURTHER ORDERED THAT** defendants' Motion to Dismiss Complaint (Doc. 66) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** plaintiffs' Motion to File Supplement to Final Witness and Exhibit List (Doc. 165) is denied.

**IT IS FURTHER ORDERED THAT** defendants' Motion to Strike Certain Exhibits Submitted in Support of Plaintiffs' Motion for Partial Summary Judgment (Doc. 118) is granted in part and denied in part.

---

**21.** Section 12–105b(d) specifies:
The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omis-

sion or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested.
*Id.*

IT IS FURTHER ORDERED THAT defendants' Motion to Strike Affidavit of Cindy Harvel (Doc. 157) is denied.

IT IS FURTHER ORDERED THAT defendants' Motion to Strike and Preclude Testimony of Witnesses Not Previously Disclosed (Doc. 57) is granted in part and denied in part.

IT IS FURTHER ORDERED THAT plaintiffs' Motion to Exclude Expert Testimony (Doc. 155) is denied.

IT IS FURTHER ORDERED THAT defendants' Motion for Review of Magistrate's Decision on Defendants' Motion for Protective Order Regarding Plaintiffs' Rule 30(b)(6) Notice (Doc. 119) is denied.

IT IS FURTHER ORDERED THAT plaintiffs' Motion to Compel Answers to Plaintiffs' First Interrogatories and First Request for Production (Doc. 137) is granted.

IT IS FURTHER ORDERED THAT defendants' Application for Stay of Magistrate Judge's Order (Doc. 128) is denied.

IT IS FURTHER ORDERED THAT defendants' Motion for Summary Judgment (Doc. 90) is granted in part and denied in part.

IT IS FURTHER ORDERED THAT plaintiffs' Motion for Partial Summary Judgment (Doc. 107) is granted in part and denied in part.

In sum, the only claims that remain for trial are plaintiffs' IDEA claim against defendants U.S.D. # 497 and Eicher, and plaintiffs' procedural due process claim against defendant U.S.D. # 497.